JEWELERS' MERCANTILE AGENCY, Limited, v. ROTHSCHILD et al.

(Supreme Court, Appellate Division, First Department. June 5, 1896.)

1. INJUNCTION—SCOPE OF ORDER.

Where plaintiff was engaged in obtaining and publishing, in semiannual directories and weekly bulletin sheets, information for confidential use by subscribers, an injunction enjoining defendants from appropriating the information from plaintiff's publications in the future, and publishing it, prohibits such appropriation from publications of plaintiff issuing after, as well as those issued before, the commencement of the action.

2. SAME—VIOLATION.

Where defendants, enjoined from appropriating and publishing information from plaintiff's publications, publish information furnished by their agent, part of which he took from plaintiff's publications, without having examined it, to see whether it contained such matter, they violate the injunction.

3. SAME—TRANSFER OF INTEREST.

Where defendants, enjoined from publication of a directory made up by an agent under contract, because it contains information taken from plaintiff's publications, transfer their business to a corporation in which they hold the controlling interest, and assign to it their contract with the agent, and the corporation commences the manufacture and sale of the book, they violate the injunction.

4. SAME—DAMAGES—ATTORNEY'S FEES.

Defendants, in such case, are liable for attorney's fees incurred by plaintiff in a new action to enjoin the corporation from such publication.

5. SAME—CONTEMPT—PUNISHMENT.

Under Code Civ. Proc. § 14, subd. 3, authorizing the punishment of contempt by fine and imprisonment, where the right or remedy of a party to a civil action or proceeding may be defeated by such contempt, imprisonment should not be imposed for violation of an injunction against the publication of a directory containing information taken from plaintiff's publications, where it appears that defendants had no knowledge that it contained the prohibited matter, and the violation resulted only from their negligence to exercise ordinary care to see that it did not contain such matter, since these facts show absence of willfulness on their part. Rumsey, J., dissenting.

Appeal from special term, New York county.

Action by the Jewelers' Mercantile Agency, Limited, against Alonzo Rothschild and Albert Ulmann, to enjoin defendants from appropriating information obtained by plaintiff for use in publication of semi-annual confidential directories and weekly bulletin sheets for its subscribers. The injunction issued by consent, and from an order punishing them for contempt thereof by fine and imprisonment, defendants appeal. Modified.

Argued before BARRETT, RUMSEY, WILLLIAMS, and INGRAHAM, JJ.

Wheeler H. Peckham, for appellants.
Howard Mansfield, for respondent.

INGRAHAM, J. The complaint in this action alleged that the plaintiff was engaged in the business of a mercantile agency, which business consisted in obtaining from various sources information with regard to the names, places of business, street addresses, particular kinds of business, and other information, as to individuals,

firms, and corporations engaged in the jewelry trade throughout the United States and Canada, and in furnishing confidentially, for the use of the subscribers, the information thus obtained; that this information, so obtained, was arranged and tabulated, and that the plaintiff prints twice a year, viz. on the first day of January and the first day of July, exclusively for the use of its subscribers, a reference book of the jewelry trade in the United States and Canada, containing a full list of persons, firms, and corporations engaged in the jewelry trade, and that, in addition to such reference books, plaintiff prints and issues to its subscribers once a week a confidential correction sheet, of the nature of a weekly bulletin or current supplement to such reference books, containing information and any news of events or changes which may be deemed of importance to their subscribers; that said reference books and confidential correction sheets are furnished to their subscribers upon a special agreement made with each subscriber, by which the title of the books and sheets remained in the said mercantile agency; that the communications are strictly confidential between the plaintiff and their subscribers, and that the communicated information is not to be disclosed to any person or persons; that the defendants were not, and never have been, subscribers, but that they have appropriated and used information taken from the weekly correction sheets and reports, and from the reference books, which information was wrongfully and unlawfully obtained through plaintiff's subscribers, and that the defendants have published and circulated, and are publishing and circulating, from time to time, the information thus obtained, though warned by the plaintiff to desist from doing so.   And the plaintiff asks for an injunction restraining the defendants from appropriating, printing, publishing, or issuing the said Jewelers' Weekly, or from using, in any other way, or for any purpose, information contained in plaintiff's reference books, weekly correction sheets, or reports.   Upon that complaint, and upon the consent of the defendants, a judgment was entered, by which the defendants, and each of them, their printers, agents, servants, and employés, and all persons claiming to act under them, or by their authority, were perpetually enjoined and restrained from using in any way, or for any purpose whatever, plaintiff's reference books, correction sheets, or reports, and from appropriating, printing, publishing, or issuing, in any future number of the Jewelers' Weekly, or in any future publication, under whatever name, any information obtained from the plaintiff's reference books, correction sheets, or reports, and from furnishing to others any such information.   It seems to us quite clear that this injunction was within the power of the court to grant, and having been entered by consent, and having been adopted by the court as the final judgment in the action on the consent of the defendants, the defendants cannot dispute the validity or binding force of that judgment.   It is also quite clear that the sole object of the suit was to prevent the defendants from continuing to publish information which the plaintiff had furnished to its subscribers, either by its reference books, its weekly bulletin or correction sheets, or current supplement to such reference books.   As each new

reference book was published, its predecessor became substantially useless, and the business of the plaintiff was in publishing new books, with the frequent corrections, and giving to their subscribers the latest information as to the trade throughout the United States and Canada. It would be entirely useless to restrain a person from using the publications made prior to the commencement of the action, and not restrain him from using a publication made after the commencement of the action, for, long before the action could be tried and disposed of, if there was a serious litigation, the reference books in force at the time the action was brought would be obsolete. The business of the plaintiff was to furnish this information by method of these books and sheets, and to obtain from its subscribers compensation for such information; and the object of the action against the defendants was to protect that business by preventing them from surreptitiously obtaining the information which the plaintiff had collected at great expense, and from publishing it to the world, thus rendering subscriptions to the plaintiff's publication useless, and destroying the plaintiff's business. It is quite apparent that it was this appropriation of plaintiff's business and property, in violation of plaintiff's rights, that this injunction restrained, and it not only restrained the publication of past issues, but such books and information as plaintiff should subsequently issue.

This case is very different from a case where a person is restrained from using the literary property of an author. This is not literary property. These reports were not literary works. It was information obtained by plaintiff, which it had printed in a convenient form to communicate to those who were willing to pay for it; and the defendants' attempt to appropriate the result of plaintiff's labors and expenditures, for the purpose of publishing it for their own benefit, and thus destroying its value to plaintiff, was what was enjoined by this judgment. This judgment thus having been entered, enjoining defendants from using any of the publications or communications made by the plaintiff to its customers or subscribers, these defendants were bound to see to it that their publications contained no information derived from the plaintiff's books or communications to its subscribers. It would not do for them to say that they hired a man to get up a list, took the list prepared by him, without examination as to whether or not that list contained information obtained from plaintiff's books or communications, in violation of this injunction, and published it. Such an act would be a plain violation of this injunction.

The court imposed an imprisonment upon the defendants for a term of two months, and, in addition to that, fined them the sum of $2,708.06, as the damages caused by this contempt. This sum was made up of the costs, disbursements, and counsel fees of the plaintiff in this proceeding, and in an action brought by the plaintiff against these defendants, impleaded with a corporation of which defendants were the managers and principal owners, and to which the publication formerly owned by defendants had been transferred, to obtain a new injunction, to restrain the continued violation of the plaintiff's rights. The defendants claim that of this sum it was im-

proper to include in the fine, as damages sustained by the plaintiff in consequence of a violation of the injunction, the amount of the counsel fee paid to counsel in the new action brought to restrain this violation of the plaintiff's right by the corporation to whom the defendants had transferred the publication of this paper and directory. We think, however, that the necessity of paying such counsel fees was the direct result of the defendants' refusal to obey the injunction. The defendants had employed Kellar to make up this directory. After such employment, the publication business and the contract with Kellar were assigned by the defendants to, and accepted by, the corporation defendant. The corporation thus proceeded to publish the book made up by Kellar, which was a violation of this injunction. It was thus the transfer by the defendants of a contract to a corporation, which was under the exclusive control and management of the defendants, to carry out which violated this injunction which rendered necessary an action to restrain the corporation from doing the acts which the defendants had been restrained from doing. The transfer of this book or publication by the defendants to Kellar, and the defendants' authorizinz the corporation to publish the book which Kellar had prepared and superintended, and their being engaged in its manufacture and sale, were in violation of the injunction; and the transfer of their business to the corporation, so that to protect the plaintiff it was necessary that the corporation should be enjoined from the publication, were acts of the defendants which tended to render the injunction nugatory, and in consequence of these acts of the defendants, which were violations of the injunction, it was necessary for the plaintiff to commence a new action, and obtain an injunction against the corporation. By this misconduct of the defendants, the plaintiff's right was defeated, impaired, impeded, or prejudiced, and the damages which it sustained in consequence of such conduct were the expenses in prosecuting the new action, and were what the court was justified in compelling the defendants to pay.

The only other question is as to whether or not the court was justified in this case in punishing the defendants with an actual imprisonment of two months. This is a civil contempt, and the power to punish is given, by section 14 of the Code of Civil Procedure, where the right or remedy of a party to a cause of action or special proceeding may be defeated or impaired. By subdivision 3 of section 14 it is provided that a court of record has power to punish, by fine and imprisonment, a party to an action or special proceeding for any disobedience to a lawful mandate of the court; but to enforce the right of a party to a civil action or special proceeding is the main object of the section, and, when such right is protected, except where there is a willful refusal to recognize the authority of the court, the aim is attained.

We hesitate somewhat to review the discretion exercised by the court in imposing a penalty for the violation of the judgment, but, as this was a civil contempt, where the court acted upon affidavits which were before it, and which are now before us, and where it is impossible to give the same consideration to questions of this kind

in the hurry of the decision of motions at chambers as in the appellate court, we think it our duty to say just what punishment this record satisfies us should be imposed. The court has imposed as a penalty two months' imprisonment. Considering all the circumstances, and the absence of evidence of any willful disobedience of this injunction; the fact that it seems to have been proved that neither the defendants nor their employés ever had a copy of plaintiff's publications; the fact that this book was not made up directly from the plaintiff's publications, but from a list furnished by another person; that there is no evidence to show that the defendants, or their employé who made up this new directory, had direct knowledge that the book which they were about to publish did contain any information taken from the plaintiff's works,—would seem to indicate that this contempt was not so much a willful disobedience as a failure to exercise the reasonable care and prudence which the injunction required the defendants to exercise; and we are inclined to think that full justice will be done to the plaintiff by modifying the order, so as to inflict upon the defendants the fine sufficient to indemnify the plaintiff for all damages sustained by them, instead of the imprisonment provided for in the order, and the order, as thus modified, is affirmed, without costs.

BARRETT and WILLIAMS, JJ., concur.

BARRETT, J. (concurring). In March, 1887, the defendants, upon their own consent, were enjoined from thereafter using in any way the plaintiff's reference books, and from printing in any future publication, under whatever name, any information obtained therefrom. That this injunction referred to the plaintiff's current publications in the future, as well as in the past and present, cannot be doubted. The purpose was to prevent the use of information which the plaintiff was securing for, and furnishing to, its subscribers,—information which varied from time to time, and the value of which consisted in its continuous accuracy. Nor can it be doubted that the defendants have disobeyed this injunction. The evidence, however, fails to establish the fact that they have done so willfully. But there was an act of disobedience, and that act was a violation of the plaintiff's rights under the injunction judgment. That which, for the plaintiff's protection, the defendants were commanded not to do, they, through their employé, have done. Indemnity must follow, or the injunction becomes valueless. The injury to the plaintiff was the same, whether the disobedience was willful or merely negligent. The defendants were not guilty of a criminal contempt where the element of willfulness is essential, nor have they been proceeded against therefor. The present proceeding was for a civil contempt, the object of which is not punishment in the interest of public justice, but in that of the individual litigant. The civil contempt may be willful, but it is not necessarily so. People v. Dwyer, 90 N. Y. 402. Punishment in the interest of the individual litigant is principally meted out to redress the injury done by the mere act of disobedience. Strict-

ly speaking, the object is not punishment; that is, punishment in the ordinary sense of that word as used in criminal proceedings. The real purpose is to obtain satisfaction for the violation of the individual's rights as secured to him by the mandate of the court; and the punishment, whether it be fine or imprisonment, or both, is but a means to that end. People v. Court of Oyer & Terminer, 101 N. Y. 245, 4 N. E. 259. Thus, the defendants here were liable, although the material or physical act of disobedience was committed by their employé. They were liable, just as they would be in a civil action, for the acts of their agent. Their liability, however, in the present instance, rests, not only upon this principle, but upon their inattention to the acts of their employé, when attention was clearly called for. Mr. Rothschild says that in employing Kellar to compile the jewelers' directory in question, he cautioned him not to use the plaintiff's reference books; indeed, to avoid all reference books. Upon the trial of an action in the supreme court in March, 1894, Kellar testified that Mr. Rothschild told him that he did not think it possible to get the names without using reference books. It is apparent, therefore, that Mr. Rothschild recognized the natural tendency to use the reference books, and the danger of such use. He was clearly called upon to watch Kellar diligently, and to see to it that the latter did not use the enjoined reference books. He could not properly make a contract for the production of such a directory as that contemplated, without personally seeing to it that the agent respected the injunction. Any other doctrine would simply point the way to easy evasion of the mandates of the court.

The question remains whether the counsel fees in the action against the corporation were damages legitimately flowing from this disobedience of the injunction. It seems that, shortly after Kellar was employed by the defendants to compile the directory in question, a corporation was formed by the defendants and others, to which the defendants' business was transferred. The defendants owned most of the stock of the corporation, and the defendant Ulmann became its president. The employment of Kellar by the defendants was assumed by this corporation, and it published the directory which he compiled. The defendants were liable for Kellar's acts, notwithstanding the assumption by the corporation of his employment. They were liable, because he was their agent throughout. The corporation was substantially their creature, and its assumption of Kellar's employment was a part of their plan. At the same time, the corporation was in law an independent legal entity. It was not enjoined in this action, and it could not be punished for the violation of the injunction against these individual defendants. Yet these individual defendants set this independent legal entity in motion, to publish and sell the book which contained the enjoined matter. They conferred upon it the power to injure the plaintiff, without liability on its part for contempt. Thus an injunction against the corporation became a practical necessity, and that necessity clearly resulted from the defendants' acts in contempt of the injunction. The defendants'

contempt consisted in the use of the reference books, and in the publication individually, and as the agents of the corporation, of the directory, with enjoined matter embodied therein. The corporation was not the defendants' agent in this use and publication. If it had been, an action against it might have been unnecessary. The punishment of the principal would then have been adequate to stop continuous disobedience by the agent. But such punishment would have been inadequate to stop the independent action of the corporation. As that independent action was authorized by the defendants, they should be held responsible for the expense necessarily incurred in stopping what they so authorized. It should be observed that the defendants were not held for the damages resulting from the acts of the corporation. That was left to be settled in the action against the corporation itself. They were held only for the damages directly resulting from the authority which they conferred upon the corporation. Those damages were naturally the expenses to which the plaintiff was put in enjoining the independent corporation, which, as we have seen, had been created by these defendants, and authorized by them to do the act which constituted the wrong. These expenses were not recoverable from the corporation. They were not the statutory costs of the action against it. They were the legal charges and disbursements which were necessarily incurred in stopping the mischief which the defendants' contempt permitted. Such charges and disbursements, having been so incurred because of the necessity of moving independently against the corporation, and in consequence of the authority conferred upon it by these defendants, were properly treated as part of the plaintiff's damages. Imprisonment, however, should not have been inflicted. The court, it is true, had jurisdiction to impose imprisonment, as well as a fine, but its judgment in that respect is reviewable, the same as its pecuniary judgment. A different rule applies with regard to criminal contempt. There the judgment is analogous to the judgment in a criminal action. In civil contempts, however, the judgment upon appeal may properly be modified, the same as the judgment in civil actions. There may, undoubtedly, be cases where, although the civil contempt be not willful, imprisonment, as well as fine, should be imposed; cases where the injured party should be secured against a repetition of what is but a careless or negligent act of disobedience. It may frequently happen that substantial redress to the party injured demands a lesson which will awaken the wrongdoer's sense of responsibility, and check even thoughtless disregard of the serious duty imposed upon him by judicial mandate. Where the propriety of this additional redress is questioned, we should not ordinarily interfere with the exercise of judgment, especially in a balanced case. But, upon full consideration of the present record, we are satisfied that imprisonment is not required for the redress of the wrong which was here committed, nor even for the protection prospectively of the plaintiff's rights. The contempt was not willful. There is no reason to suspect its repetition, directly or covertly. The corporation was not created for the purpose of evasion.

It has been itself enjoined. The defendants should have been more careful, more actively vigilant. That is all that can fairly be said. Even their negligence was not gross, or wanton, or reck-less. The publication with names taken from the plaintiff's books would not have occurred had they exercised greater care, and done their full duty with respect to the plaintiff's judgment. That is the sum and substance of their offense. It will be adequately ex-piated, and the plaintiff's rights sufficiently redressed, by the pe-cuniary compensation which was awarded.

The order appealed from should be modified by striking out the provision for imprisonment, and, as thus modified, affirmed, with-out costs of this appeal.

WILLIAMS and INGRAHAM, JJ., concur.

RUMSEY, J. I concur in the opinion of Mr. Justice INGRA-HAM in this case, and in the conclusion reached by him, except that part of it which treats of the punishment of imprisonment im-posed upon these defendants. It seems to me that, upon the evi-dence, the court below might properly have concluded, as it evi-dently did conclude, that the violation of this injunction was will-ful and intentional on the part of the defendants, and such a con-clusion is warranted by the fair inferences which are to be drawn from the testimony in the case. That being so, it seems to me that the infliction of an imprisonment was a fair exercise of the dis-cretion of the court, and that part of the order should be affirmed with the remainder.

