(82 App. Div. 37.)

## LURMAN v. JARVIE et al.

(Supreme Court, Appellate Division, First Department. April 9, 1903.)

1. COFFEE EXCHANGE—SUSPENSION OF MEMBERS—JURISDICTION — ERRONEOUS ACTION—LIABILITY—MALICE.

Where a coffee exchange had jurisdiction to suspend members for violation of its rules, the fact that it arbitrarily and erroneously suspended a member without affording such member an opportunity to be heard did not render the members of the exchange liable for injury to such member's business reputation, in the absence of an allegation and proof that its action was induced by malice.

2. SAME—COUNSEL FEES.

Where, in an action against members of an exchange for the wrongful suspension of a member, there was no allegation or proof of malice, the members of such exchange were not liable for counsel fees and other incidental disbursements in an action by the suspended member to compel his reinstatement.

3. SAME—DUES.

Where a member of an exchange, who had been erroneously suspended, paid dues for the year in which he was suspended, but it was not shown that such payment was caused by the suspension, they could not be recovered in an action against the members of the exchange as damages caused thereby.

Appeal from Trial Term, New York County.

Action by Theodor G. Lurman against James N. Jarvie and others. From a judgment in favor of defendants, plaintiff appeals. Affirmed.

The facts alleged in the complaint and stated in Exhibit A thereto, annexed by counsel for plaintiff in opening the case, so far as material to the questions arising upon the appeal, are as follows: The Coffee Exchange of the city of New York, composed of coffee merchants, was incorporated by chapter 393, p. 637, of the Laws of 1885. Among the objects of its incorporation were these: "To adjust controversies between its members; to inculcate and establish just and equitable principles in the trade; to establish and maintain uniformity in the rules, regulations, and usages of the trade; to adopt standards of classification of coffees, and to generally promote the above-mentioned trade in the city of New York, and increase its amount and augment the facilities with which it may be conducted." The plaintiff was a member, and the defendants constituted the board of managers. The plaintiff is also a member of the firm of Theodor G. Lurman & Co., of Baltimore, Md., dealers in coffee. Membership in the exchange was valuable. Plaintiff and his firm did a large business in coffee both in New York and Baltimore, and enjoyed a valuable reputation for honest and fair dealing in his trade and business as a merchant. The exchange had rules and regulations, and one of its principal objects was the adjustment of controversies between its members expeditiously, inexpensively, and by the members without recourse to the courts. The appellant had a contract with the firm of W. H. Crossman & Bro., the members of which were also members of the exchange, for the purchase of a quantity of coffee of different grades, which was in transit. The contract provided that the coffee was to be graded by the firm of Mackey & Small for the purpose of determining whether or not it came up to the grade called for by the contract; but, in case the appellant was dissatisfied, he could appoint a grader, and, in case his grader and said firm could not agree, they could appoint a third person to act as "grade arbitrator." On the arrival of the vessel the appellant refused to accept the coffee and to appoint a grader, claiming that it was adulterated, and therefore could not be lawfully graded, held, or sold as an article of commerce under the statutes of this state. The alleged adulteration consisted of artificial coloring and polishing for the purpose of giving the beans a uniform color and smooth appearance and of concealing defects. The graders named in the contract held that the coffee complied with its terms. The matter was referred to a committee of three of the exchange, called "adjudicators." The adjudicators, or a majority of them, decided against the appellant, without hearing his proof, or determining the question of adulteration, but holding that the terms of the contract required that grade arbitrators be appointed. The board of managers, by a tie vote, sustained the decision of the adjudicators. The appellant then, under protest, appointed a grader. His grader and the firm named in the contract disagreed, and a grade arbitrator was appointed. The graders refused to hear evidence of adulteration offered by the appellant, or to determine that question; but two of them certified that the coffee was "up to sample," and was "good delivery" under the contract. The appellant refused to accept the coffee, and the vendors made complaint to the exchange of such refusal and violation of the contract by the appellant. It was referred to the adjudication committee. The appellant appeared before the committee, and offered proof of alleged adulteration and unlawful character of the coffee, but the committee refused to hear the proof or to determine the question, holding that appellant was concluded by the decision of the graders, and reported to the board of managers that it found the complaint sustained, and that under the rules of the exchange it was the duty of the appellant to accept the coffee. The appellant made complaint against Messrs. Crossman & Bro. for having availed themselves, as was claimed, of the "technicalities of the rules of the exchange to force acceptance of unlawful goods contrary to just and equitable principles of trade"; and also against the graders for having decided the case without determining the merits, and "undertaken to grade unlawful—i. e., adulterated—goods."

Notice was given appellant that the report of the adjudication committee

on the complaint against him would be considered by the board of managers on October 16, 1894, at 3:30 p. m., and that his complaint against Messrs. Crossman & Bro. and the graders would be considered by the adjudication committee at 11:30 of the same day. The appellant was in Baltimore, and did not receive notice of these appointments of hearings until October 14, 1894. He was unable to attend on the 16th, but by letters requested that the board delay action until after the hearing by the adjudication committee of said complaint, and pointed out that the merits of the controversy had never been determined, and demanded that the board hear and determine the same. He also forwarded to the board of managers a statement of his case, containing extracts from the statutes, accompanied by the proof of his contention, constituting his defense before the board and his complaint before the committee.

It appears that the fact of adulteration by painting and polishing in the manner, if not to the extent, claimed by the appellant, was conceded by Messrs. Crossman & Bro. before the adjudication committee, and no attempt was made to show that it was not condemned by the statutes. The claim was made, however, that the small quantity of adulteration was not deleterious to public health. The adjudication committee adjourned the hearing on appellant's complaint to October 18, 1894, at 11:30 a. m., but nothing further appears to have been done with it. The board of managers, however, without considering or determining the merits of the controversy further than having appellant's claims so forwarded to them as aforesaid read before them and placed on file, passed a resolution on October 16, 1894, censuring the appellant, and decreeing that, unless he settled with Messrs. Crossman & Bro. in full before noon of October 19, 1894, he should stand suspended from all the privileges of the exchange for the period of one year. The appellant then protested in writing, and notified each of the respondents that their action was illegal; that they were depriving him of his rights as a member to have the merits of the question whether or not the coffee was adulterated and condemned by the statute determined by the exchange; that they were attempting by duress of suspension to coerce him into accepting unlawful goods, without hearing or determining the merits of the controversy; that great damage would result to him in the loss of his privilege as a member and in the injury to his business reputation; and that he would hold them personally responsible for such damages as he should sustain. He further requested that the board reconsider the matter. The board reconvened on October 19, 1894, but evidently without further notice to the appellant, and again passed the resolution by ballot, instead of viva voce, as before, except that the time was extended to October 22, 1894, when the appellant was suspended without any further consideration of the case. He was excluded from the privileges of the exchange, and his name posted as a suspended member. His suspension also appeared in the newspapers. He was required to pay and did pay his annual dues of $50 for the period of his suspension.

The appellant then instituted a proceeding to compel his reinstatement by mandamus. The Special Term denied the application, but the General Term held, in effect, that the appellant could not be suspended for refusing to take coffee claimed to be adulterated, within the meaning of the statute against it, "without inquiry, investigation, and decision as to whether this claim was justified," and reinstated the appellant. Matter of Lurman, 90 Hun, 303, 35 N. Y. Supp. 956, affirmed in 149 N. Y. 588, 44 N. E. 1125. Reinstatement does not appear to have been effected within the year's suspension. The complaint alleges that the suspension was illegal, and without jurisdiction on the part of the respondents to render the determination; but it does not appear that the notice he received was not in accordance with the by-laws of the exchange, and it seems to be conceded that, if the respondents had considered the question of adulteration, and decided against the appellant, they would have had authority to censure and suspend him. The damages alleged for expenses in obtaining reinstatement and injury to business generally is $5,000, but on the opening counsel stated that the injury most complained of was that to appellant's business reputation.

It is not alleged in the complaint that the defendants entertained or were actuated by malice toward the plaintiff. At the commencement of the trial

the defendants moved to dismiss the complaint, owing to the omission of an allegation of malice. The motion was denied, and counsel for defendants excepted. Counsel for the plaintiff then opened the case, and the stenographer took his opening. The motion for a dismissal of the complaint was then formally renewed upon the grounds: "First, that no malice is alleged against the defendants, either in the opening of counsel or in the complaint; second, that the defendants, upon the opening and upon the complaint appear to have acted in a judicial or quasi judicial capacity, and therefore are not liable for errors; third, that the only error charged against them is an error of excluding evidence, and there is no personal liability for such an error; fourth, there is no cause of action." Counsel for plaintiff thereupon asked leave to amend the complaint by alleging malice, but the amendment, being objected to as changing the whole cause of action, was denied. It was then stated by counsel for plaintiff that the legal questions presented were serious, and he suggested that court grant defendants' motion for a dismissal either on the complaint alone or on the complaint and opening, and give his client an exception. The court then inquired of counsel for the plaintiff if he did not state in his opening that he might be able to show malice inferentially, to which he replied: "I was going to say, in relation to the question of malice, that I stated in my opening the facts, as I am advised is the correct statement, and which I have confirmed since the adjournment of the court by reading Exhibit A, which is attached to the complaint. Whether they confirm the inference of malice or not, I do not care at the present time to express any opinion, and I prefer to say nothing more than that we could show no other facts from which the inference of malice could be drawn except those stated in the complaint and in the exhibit attached to the complaint. Those were facts which were brought to the attention of the board of managers of the defendants after the report of the adjudication committee, and after the first resolution, which they passed on the 16th of October. But, entirely independent of that, I regard the serious question in the case as the judicial question, and it seems to me advisable that before we go into this case it would be just as well, as the question has been raised, that that legal question should be determined."

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and LAUGHLIN, JJ.

Charles Stewart Davison, for appellant.
Edward M. Shepard, for respondents.

LAUGHLIN, J. We are of the opinion that this action cannot be maintained, and that the complaint was properly dismissed. Neither bad faith nor malice is alleged, nor are the facts stated of such a nature as to necessarily imply the existence of either. The plaintiff having expressly conceded, in order to present the legal question, that he is unable to show any other facts than those stated in his complaint, exhibit annexed, and in the opening—the material parts of which are set forth in the statement of facts—malice, not having been alleged, should not be inferred, if the facts are open to an inference of good faith; and we think they are. One of the principal objects of the Coffee Exchange was to provide for the speedy and inexpensive determination by arbitration of controversies between its members for the purpose of saving the delay and expense incident to an appeal to judicial tribunals. The plaintiff's fellow members of the exchange on this arbitration erred in their view of his rights, as did likewise the respondents, as members of the board of managers. Of course, the respondents acted with full knowledge of the plaintiff's claims as to his rights; but it is manifest that they believed that it was his duty to

accept the decision of the arbitrators, and that the proper discipline of the members of the exchange required that he should be suspended for failing to do so. It does not appear that they proceeded in disregard of any by-law of the exchange. It is conceded that they had power to suspend members for cause, and that, if they had heard the plaintiff, and then suspended him, no action would lie. The appellant's contention apparently is that the respondents acted without jurisdiction. It appears that the suspension of the plaintiff arose incidentally out of the arbitration proceeding concerning the grading of the coffee and the enforcement of the contract as between the members. It is not denied that these proceedings originated in accordance with the by-laws of the exchange, and that the plaintiff had full knowledge and such notices as were required and provided for by the by-laws or rules of the exchange. He actually received two days' notice of the hearing which resulted in his suspension. The fair inference is, although the fact is not specifically alleged or stated, that the method of enforcing the arbitration is by the suspension or expulsion of the member, and that this action may be taken by the board of managers upon the report of the adjudicators, when there is no denial of the fact that the member refuses to be bound by their determination. Manifestly, the contingency which arose in this case was not foreseen, and apparently no provision had been made for permitting the member to show by formal testimony that the condition of the coffee was such that it could not be lawfully dealt in under the laws of this state. The court in the mandamus proceeding decided, regardless of any by-law of the corporation, that the plaintiff, before being suspended, was not only entitled to be heard, but to show in defense of his action the illegal character of the coffee which it was proposed to require him to accept, and that he could not be suspended for refusing to accept adulterated coffee. Matter of Lurman, 90 Hun, 303, 35 N. Y. Supp. 956, affirmed in 149 N. Y. 588, 44 N. E. 1125. At first view the conduct of the respondents would seem to have been arbitrary; but it is not improbable that they regarded the action of the appellant in refusing to abide by the decision of the adjudicators as tending towards insubordination, and calling for discipline. They may very well have supposed that the effect of their charter and their by-laws was that their members submitted absolutely and finally to the decision of their fellow members of the exchange upon questions concerning their contracts and dealings with one another; and doubtless that had been the history of the exchange, for we know of no instance where such a question has been previously presented to the courts for review. If the respondents proceeded wholly without jurisdiction, it may be that they would be liable for any legal damages sustained by the plaintiff in his property rights as the direct result of their illegal acts, upon the principle that subordinate officers, even though acting in a quasi judicial capacity, are bound to see that they act within their authority, and good faith does not protect them in assuming jurisdiction which they have not. N. Y. Milk Products Co. v. Damon, 57 App. Div. 261, 68 N. Y. Supp. 183, affirmed in 172 N. Y. 661, 65 N. E. 1119; City of New York v. McLean, 170 N. Y. 374, 63 N. E. 380; Miller v. City of Amsterdam, 149 N. Y. 288, 43 N. E. 632; Mygatt v. Washburn, 15 N. Y. 316; Matter of

Leggat, 162 N. Y. 437, 56 N. E. 1009.  But it appears that they had jurisdiction to hear the charges against the appellant, and he had notice of the hearing.  Having jurisdiction, and it being their duty to act, they failed, through ignorance of their duties, to fully exercise it, and, in effect, refused to hear and consider evidence, which, if heard and considered, would, upon the law, have precluded the action taken by them. And, it being the duty of respondents to act, this brings the case fairly within the rule that those acting in a quasi judicial capacity are not liable for errors of judgment in erroneous decisions in determinations affecting the personal or property rights of others in the absence of malice.  Harman v. Tappenden et al., 1 East's, 555;  Barhyte v. Shepherd, 35 N. Y. 238;  Jenkins v. Waldron, 11 Johns. 114, 6 Am. Dec. 359;  Porter v. Haight, 45 Cal. 631;  Downer v. Lent, 6 Cal. 94, 65 Am. Dec. 489;  Ackerley v. Parkinson, 3 Maule & Selwyn, 411; Jones v. Brown, 54 Iowa, 74, 6 N. W. 140, 37 Am. Rep. 185;  Handshaw v. Arthur, 9 App. Div. 175, 41 N. Y. Supp. 61, affirmed in 161 N. Y. 664, 57 N. E. 1111.

As shown in the statement of facts, the plaintiff's main purpose in bringing the action is to recover damages for injury to his business reputation, and his counsel likens the action to one for slander or libel. These actions, however, are based upon malice, which sometimes has to be affirmatively shown, and in other instances it is presumed from the nature of the wrongful act.  The same is true of actions for malicious prosecution and false arrest and imprisonment.  We know of no class of actions where damages to one's character or reputation are recoverable in the absence of malice express or implied.  But, however the rule may be in other cases, we see no propriety for permitting a recovery for damages to the plaintiff's business reputation on the facts of this case, there being no malice alleged or facts stated from which it should fairly be implied.  Harman v. Tappenden et al., 1 East's, 555.

The plaintiff also alleges as an item of damage counsel fees and other incidental disbursements incurred in instituting the mandamus proceeding to procure reinstatement.  We do not understand that this claim embraces the costs and disbursements allowed and taxed in the mandamus proceedings, which have been awarded against the exchange itself, and were undoubtedly paid.  Where the gravamen of an action is malice—as, for example, malicious prosecution or false arrest or imprisonment, the counsel fees necessarily incurred by the plaintiff in the former action are recoverable.  8 Am. & Eng. Enc. of Law (2d Ed.) 675;  Sheldon v. Carpenter, 4 N. Y. 579;  55 Am. Dec. 301; Williams v. Garrett, 12 How. Prac. 456.  In an action upon an undertaking for an injunction or attachment where the recovery of such damages is fairly contemplated by the statute and contract, in actions for breach of covenants of warranty and indemnity, and in contempt proceedings, counsel fees are also recoverable.  Andrews v. Glenville Woolen Co., 50 N. Y. 285;  Rose v. Post, 56 N. Y. 603;  Tyng v. American Surety Co., 69 App. Div. 137, 74 N. Y. Supp. 502;  Crounse v. Syracuse, C. & N. Y. R. R. Co., 32 Hun, 497;  Dubois v. Hermance, 56 N. Y. 673;  Jewelers' Agency Co. v. Rothschild, 6 App. Div. 499, 39 N. Y. Supp. 700;  Sedgwick on Damages, § 237;  8 Am. & Eng. Enc. of Law (2d Ed.) 673, 675, and 677.  The rule is well settled in

this state, however, that disbursements for counsel fees are not ordinarily recoverable as damages for a breach of contract, or even of a statutory duty, or in common-law actions for tort, in the absence of malice.. Bishop v. Hendrick, 82 Hun, 323, 31 N. Y. Supp. 502, affirmed on opinion below, 146 N. Y. 398, 42 N. E. 542; Clason v. The Nassau Ferry Co., 20 Misc. Rep. 315, 45 N. Y. Supp. 675, affirmed in 27 App. Div. 621, 50 N. Y. Supp. 160; Hicks v. Foster, 13 Barb. 663; Lincoln v. R. R. Co., 23 Wend. 425; Mattlage v. N. Y. El. R. Co. et al. (Com. Pl.) 17 N. Y. Supp. 536. We think it clear, therefore, that counsel fees and other incidental disbursements in the action, not taxed as costs or disbursements, are not recoverable.

The only other loss alleged to have been sustained by the plaintiff is the payment of his annual dues for the year during which he was suspended, and this is not specifically alleged as an item of damages. The payment of these dues was not caused by the suspension. They were the ordinary dues levied upon each member presumably pursuant to the by-laws of the exchange. Consequently, this item would not be recoverable as damages, at least unless it were shown that damages were suffered on account of the appellant being deprived of the privileges of membership, and such damages were so speculative as to be incapable of ascertainment with sufficient definiteness and certainty to be specially pleaded, proved, and recovered. It is not so alleged in the complaint.

We therefore find no aspect of the case which would justify a recovery. It follows that the judgment should be affirmed, with costs. All concur.; VAN BRUNT, P. J., in result.