(100 App. Div. 317)

### PEOPLE v. HARBER.

(Supreme Court, Appellate Division, First Department. January 6, 1905.)

1. CRIMINAL LAW—DISCHARGE OF PRISONER ON HIS RECOGNIZANCE—REVOCATION—TRIAL—CONVICTION—JURISDICTION.

Where the record on appeal showed that when defendant was arraigned before the Court of Special Sessions he was discharged on his own recognizance, and that thereafter the order was revoked, and trial and conviction had, and it did not appear that before trial there was any investigation of the charge, no irregularity appeared, since, even if there was no authority to discharge, the order had not the effect of an acquittal, and, if the revocation of the order was unauthorized, nevertheless, the defendant being before the court, it had jurisdiction.

Hatch and Laughlin, JJ., dissenting.

Appeal from Court of Special Sessions.

Jacob Harber was convicted of petit larceny, and he appeals. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Isidore Cohn, for appellant.
Edward Sanford, for the People.

INGRAHAM, J. The record states that the defendant was, on February 16, 1901, arrested, and charged with the crime of larceny from the person; that on February 17th he was arraigned before a city magistrate; that he pleaded not guilty, and was held for trial at a Court of Special Sessions; that he was arraigned before the Court of Special Sessions, and discharged on his own recognizance; that on April 5, 1904, he was tried for the crime before the Childrens' Part of the Court of Special Sessions, and was convicted, and, after

a motion to set aside the judgment and for a new trial and for an arrest·
of judgment and for a trial by a full bench was made, he was commit-
ted to the House of Refuge.   When the case came on for trial before
the Childrens' Part of the Court of Special Sessions, counsel for the
defendant stated that if the court found, when he was first arrested,
that the defendant was too young to be tried, he did not think that the
court could reopen the case, whereupon the court stated that the
defendant was discharged upon his own recognizance, and subsequently
brought back for trial.   No other ruling was made, and no exception
was taken.   The defendant then pleaded not guilty.   The evidence for
the prosecution having been taken, there was no evidence offered for
the defendant, and the court found the defendant guilty.   By the judg-
ment it appeared that on February 19, 1901, before the Court of Special
Sessions, the defendant was discharged on his own recognizance;
that on April 5, 1904, the order discharging the defendant was re-
voked, and the defendant was placed on trial, and on the 5th of April,
1904, was convicted, and committed to the House of Refuge.   There is
no other record as to the proceeding before the Court of Special Ses-
sions when the defendant was first arrested and arraigned before it.
I think we must assume from this record that the defendant was not
tried when first arraigned in 1901, and that no disposition was then
made of the charge against him.   A discharge upon a prisoner's own
recognizance is nothing more than an admission to bail without surety.
There is nothing to show that there was any investigation as to the guilt
or innocence of the defendant, or any adjudication that he should not
be tried for the crime charged.   If, upon his being brought before the
court for trial, for any reason he was not tried, and was then admitted
to bail, there was certainly nothing to prevent the court before whom
the charge was pending from calling upon the prisoner at any time to
appear for trial, and, in case of his failure to appear, rearresting him,
and then disposing of the charge against him.   When the defendant was
brought before the Court of Special Sessions, consisting of three judges,
the order discharging him upon his own recognizance was revoked.
But, assuming that the court had no jurisdiction to revoke that order,
the defendant was then before the court, charged with the crime, and
it seems to me that the court had jurisdiction to try him, and render
judgment if his guilt was proved.   Assuming that the court had no
authority to discharge the prisoner upon his own recognizance, the
effect of that order was not an acquittal.   There is nothing in the
record to show that when the defendant was discharged upon his own
recognizance the case was not adjourned to a subsequent day, nor
did the prisoner make such a claim when he was arraigned for trial.

To reverse this judgment we must assume irregularity, which was
neither claimed nor proved before the trial court, and, as the defendant
was proved guilty of the charge, I think the conviction should be af-
firmed.

VAN BRUNT, P. J., and PATTERSON, J., concur.

LAUGHLIN, J. (dissenting).   On the 16th day of February, 1901,
the defendant was arrested without a warrant by a police officer of the-

city of New York, who detected him in the act of picking the pocket of one Eva Schmidt while she was standing in front of a show window near Avenue A and Fourth street, in the city of New York. The officer took him to the station house, where he was held overnight on the charge of larceny from the person, and the next morning he was arraigned before Magistrate Cornell in the First Division City Magistrates' Court, Fourth District, where he was charged, upon the deposition of said Eva Schmidt, with larceny from the person. The defendant pleaded not guilty, and an examination was had, and upon the evidence adduced he was held for trial in the Court of Special Sessions. On the 19th of the same month the defendant was arraigned in the Court of Special Sessions held by Presiding Justice Jacobs and Justices Holbrook and McKean. He pleaded not guilty, and was discharged on his own recognizance. This is the only record of the original disposition of the prosecution. It does not appear at whose instance the defendant was discharged. The case was not adjourned and the court was not continued. It does not even appear that a formal recognizance was executed by the defendant individually for his appearance at any particular time, or that he was orally directed by the court to appear at any particular time for trial, or for any further proceeding in the prosecution against him. After the lapse of more than three years, and on the 5th day of April, 1904, and after a change in the law by which the trial of all such offenses by children is required to be had in a Court of Special Sessions specially prescribed held by one justice and known as the "Childrens' Part" (sections 1418 and 1419 of the Greater New York Charter, as amended by chapter 590, pp. 1624, 1626, of the Laws of 1902, and chapter 159, pp. 361, 363, of the Laws of 1903), the Court of Special Sessions of the First Division, held by Presiding Justice Hinsdale and Justices McKean and Wyatt, assumed to make an order reciting that the defendant had been discharged on his own recognizance, and was under the age of 16 years, revoking the order of February 19, 1901, discharging him on his own recognizance, and directed that the clerk transmit all the papers to the clerk of the Childrens' Part, "there to be dealt with according to law." On the same day Justice Olmstead, presiding in the Court of Special Sessions, Childrens' Part, also assumed to make an order revoking the order discharging the defendant on his own recognizance, and ordering that defendant be placed on trial. How, or by what authority, the defendant was brought into court again, does not otherwise appear; but he was in fact in court, and placed on trial, and convicted, and sentenced to the House of Refuge. The judgment upon which the sentence was imposed shows briefly the original plea in the Court of Special Sessions on the 19th of February, 1901, the discharge and the order revoking the discharge, the placing him on trial and the trial, conviction and sentence; but does not show that he was required to plead again after the revocation of the discharge. The record of the proceedings on the trial indicates that on account of the death of the counsel who originally appeared for the defendant and the appearance of other counsel on this trial he was required to plead over again, and that he did plead not guilty. The record shows that the defendant objected at the commencement of this trial in the Childrens' Part to being required to plead over again and to

any proceedings, upon the ground that he had once been discharged, which was, in effect, an objection to the jurisdiction of the court.

I am of opinion that the court did not have jurisdiction over the defendant. As already observed, the record of the conviction from which the appeal is taken shows that the defendant was placed on trial on the original charge, and by virtue of the original proceedings as modified by the order revoking the discharge. The conviction, therefore, cannot be sustained upon the theory that, even though, by discharging the defendant upon his own recognizance without continuing or adjourning the court, jurisdiction was lost, yet the crime was not wiped out, and the people were at liberty to proceed anew. I do not question the right of the people to proceed de novo so long as the statute of limitations has not run against the prosecution; but in so proceeding it is manifest that, the defendant being at liberty, it would be necessary to file an information and obtain a warrant for his arrest, and to arraign him upon the charge, which does not appear to have been done. If the doctrine that jurisdiction of an inferior court is not presumed, and that the record must show the jurisdictional facts, has any substance left, then this conviction cannot stand. The Court of Special Sessions, of course, falls within the category of an inferior court of limited jurisdiction. It follows that its authority must be found in the statute. I have examined the provisions of the statutory law, and find none that either expressly or impliedly confers jurisdiction upon the Court of Special Sessions upon organizing for the arraignment of a prisoner and after taking a plea to discharge him upon his own recognizance without any attempt to continue the case either by adjournment of the court or otherwise, and I am convinced that no such authority exists. The offenses over which Courts of Special Sessions in the City of New York have jurisdiction are enumerated in the Greater New York Charter (section 1409, Greater New York Charter); but the legislative authority conferred upon the court with reference to the arraignment of the defendant, the plea, and the trial is that contained in the Code of Criminal Procedure regulating the authority of Special Sessions generally throughout the state (section 741, Code Cr. Proc.). Section 699 of the Code of Criminal Procedure provides that, "when the defendant is brought before the magistrate, the charge against him must be distinctly read to him, and he must be required to plead thereto"; section 700 provides that the pleading must be oral, and entered upon the minutes of the court; and section 701 provides that "upon a plea other than a plea of guilty, if the defendants do not demand a trial by jury the court must proceed to try the issue." The only express provision for an adjournment is that contained in section 703, when a trial by jury is demanded, and even then the trial of the case must not be postponed more than three days without the consent of the defendant. There are certain provisions of the charter of the city relating to methods of procedure in the Courts of Special Sessions designed to conform them to those in the Court of General Sessions; but these provisions must be confined strictly to matters of procedure as distinguished from questions of jurisdiction. Greater New York Charter, §§ 1410, 1412. In Matter of King (Sup.) 6 N. Y. Supp. 420, it was held that the Police Court of Buffalo, which is a Court of Special Sessions, had no power to

adjourn a bastardy proceeding from September 29 to November 27, 1887; citing sections 838 to 860 of the Code of Criminal Procedure. The only provision in the statute concerning an adjournment was that on the application of the defendant the case might be adjourned not exceeding 30 days. In People ex rel. Lotz v. Norton, 76 Hun, 7, 27 N. Y. Supp. 851, it was held that when a Court of Special Sessions is organized, and the accused is arraigned and pleads, there is no authority for the substitution of another justice, and that by so doing jurisdiction was lost, even though the defendant assented thereto. In People ex rel. Johnson v. Webster, 92 Hun, 378, 36 N. Y. Supp. 995, it was held that a Court of Special Sessions, having passed an unauthorized sentence, ceased to exist, and could not be reorganized to pass the proper sentence. In People v. McPherson, 74 Hun, 336, 26 N. Y. Supp. 236, it was held that, where the trial of a case is once commenced as by the arraignment of the defendant and taking of his plea in Court of Special Sessions, it must proceed to the end before the same court. In People v. McLaughlin, 57 App. Div. 454, 68 N. Y. Supp. 246, where a warrant was issued by a magistrate returnable before himself, and the case was then sent before another magistrate, who would have had jurisdiction originally, for trial, it was held that the court was without jurisdiction, and the conviction was reversed. In Lattimore v. The People, 10 How. Prac. 336, it was held that after the trial and conviction in a Court of Special Sessions sentence could not be passed the following day, as the court, not having been continued, terminated, and could not be reorganized or revived, as the statute confers no such power. In People ex rel. Cook v. Smith (Sup.) 9 N. Y. Supp. 181, affirmed 125 N. Y. 692, 26 N. E. 751, it was held that, when a trial is had in a Court of Special Sessions, and the certificate of judgment delivered to the proper officer, the court is functus officio, and, though the judgment orally pronounced was valid, if the certificate of conviction be void, the justice has no power to revive the court for the purpose of signing a proper certificate of conviction. In People v. Andrews, 50 Hun, 591, 3 N. Y. Supp. 508, it was held that, where a magistrate acquiesces in the request of the defendant to have the case presented to the grand jury, and sends the papers to the district attorney, this terminates his jurisdiction. In Moore v. Taylor, 88 App. Div. 4, 84 N. Y. Supp. 518, it was held, under the provisions of Code Civ. Proc. §§ 2959, 2960, that by an adjournment for more than eight days on the return of a summons where the defendant defaulted the court lost jurisdiction. In Handshaw v. Arthur, 9 App. Div. 175, 41 N. Y. Supp. 61, affirmed on opinion below 161 N. Y. 664, 57 N. E. 1111, it was held that by an unauthorized adjournment of a civil case a justice of the peace lost jurisdiction, the court quoting with approval the rule laid down in Jones & Crawford v. Reed, 1 Johns. Cas. 20, as follows: "The sound rule of construction in respect to the courts of justices of the peace is to be liberal in receiving their proceedings as far as respects regularity and form, and strict in holding them to the exact limits of jurisdiction prescribed to them by statute." The same principle was applied in Lurman v. Jarvie, 82 App. Div. 37, 81 N. Y. Supp. 468, affirmed 178 N. Y. 559, 70 N. E. 1102. In Duel v. Sykes, 59 Hun, 117, 13 N. Y. Supp. 166, it was held, construing the provisions of sections

2434 and 2959 of the Code of Civil Procedure, that an adjournment of a civil case without joining issue, had without the consent of the defendant, terminated the jurisdiction. In Bonney v. Paul (Sup.) 15 N. Y. Supp. 442, where a civil case was adjourned to a day thereafter to be agreed on, or, in default of an agreement, to be fixed by the justice, and the defendant failed to appear on the day fixed by the justice pursuant to the agreement, the judgment was reversed for lack of jurisdiction. Many other cases might be cited applying the same doctrine, but these are sufficient, I think, to show that the Court of Special Sessions which was organized to try the defendant on his being held for trial thereat by the magistrate lost jurisdiction over the case by discharging the defendant on his own recognizance without proceeding with the trial, or even fixing a time for trial, or attempting to continue the court in session therefor. The defendant was entitled to "a speedy and public trial" (Code Cr. Proc. § 8), and when he was brought before the justices of the Court of Special Sessions it was their duty, as they did, to organize the court, and arraign him and take his plea. The defendant at that time was only about 10 years of age, and it may well be that he was discharged on his own recognizance with a view to giving him an opportunity to reform; but the Court of Special Sessions possessed no such authority. It was its duty to keep the court alive and maintain jurisdiction of the case until the judgment was pronounced. This, I think, it did not do.

Aside from the lack of jurisdiction, which I think is fatal to this conviction, I am of opinion that public policy requires the disapproval of the practice of discharging prisoners upon their own recognizance. It is an arbitrary exercise of assumed judicial authority, and is inimical to the public welfare. These magistrates should not be permitted to thus terminate a public prosecution properly instituted. It would be unwise to invest them with authority to say who should and who should not be brought to trial; but, suffice it to say, they have not yet been vested with such authority.

I think, therefore, that the conviction should be reversed, and the defendant discharged.

HATCH, J., concurs.