Morris Cooper, Respondent, *v.* Isaac Weissblatt and Another, Appellants.

Supreme Court, Appellate Term, Second Department, February 19, 1935.

*David L. Delman,* for the appellants.

*Louis Fieldman,* for the respondent.

Cropsey, J.    The action is predicated on fraud and a conspiracy. It is somewhat unusual in its facts. The findings of the trial court were made upon conflicting evidence, but we find no reason for disturbing them.

A man named Nelson, the brother-in-law of the plaintiff, asserted some claims against the latter which he wanted disposed of according to a non-legal method. Finally, the plaintiff agreed to have them disposed of by what is called a Din Torah. This is not

an arbitration, and hence the provisions of the Civil Practice Act have no application, and the plaintiff was not obliged to make his motion to set aside the award within the time fixed by section 1459.

The Din Torah was had and the three rabbis, who constituted the tribunal, made a verbal decision in favor of the plaintiff and against all the claims made by Nelson. The same three rabbis later signed a written decision which was at variance with their verbal decision, in that it was therein stated that Nelson was entitled to have discharged a $6,000 mortgage which the plaintiff held on his property in Connecticut.

Relying upon that written decision, Nelson brought an action in Connecticut against this plaintiff to discharge of record the mortgage mentioned. In defending that action the plaintiff here claimed fraud and a conspiracy in the procuring of the written decision and succeeded.

The plaintiff brought this action claiming that the title to the mortgage was not one of the subjects submitted to the Din Torah, and that in fact no evidence regarding it was taken before that body and that the signing of the written report by two of the rabbis was procured through the fraud and misrepresentation of the third rabbi (defendant Levy) and another party who was also a rabbi as well as a lawyer (defendant Weissblatt), acting in conjunction with Nelson. The damages which plaintiff claimed were the amounts that he expended in defending the action brought against him by Nelson in Connecticut.

The findings are to the effect that the matter of the mortgage was not one of those submitted to the Din Torah for decision and that in fact no decision with reference to the mortgage was made by the rabbis that constituted that tribunal; that before the commencement of the Din Torah, Nelson and the defendants willfully and fraudulently and with malice conspired together to obtain by deceit and misrepresentation the signatures of the rabbis constituting the Din Torah to a written decision that the mortgage should be discharged of record so that that decision might be used as the basis for an action to be brought by Nelson to cancel the mortgage; that the defendants caused the written decision to be prepared, well knowing it was not in conformity with the actual decision rendered by the rabbis, and, pursuant to the conspiracy, falsely, fraudulently and intentionally represented to the other two rabbis that the paper submitted for their signature was in fact the true decision rendered by the Din Torah and that they, believing the representations of the defendants and relying thereon, signed the writing; that the representations were false and fraudulent and were known by the defendants so to be, and were made by

them with intent to deceive the other two rabbis and in furtherance and as a part of the conspiracy mentioned; that in fact the written decision was not the decision of the Din Torah; that the defendant Levy, when he signed it, knew that it was not such decision, and that he signed it willfully and maliciously intending to injure and damage this plaintiff; that pursuant to the conspiracy Nelson, well knowing that the action was baseless and without foundation, instituted an action in Connecticut to cancel the mortgage; that the defendants herein appeared upon the trial of that case and falsely testified and perjured themselves in an endeavor to sustain the false and fraudulent written award referred to; that decision was rendered by the Connecticut court in favor of the present plaintiff and against Nelson, and that in his endeavor to protect his property rights, the plaintiff herein was obliged to and did expend sums of money in defense of the Connecticut action for witnesses and counsel fees that were incidental to and necessary in the defense of that action.

As the foregoing shows, the action was based upon the alleged deceit and fraud of the defendants, accomplished through the medium of a conspiracy on their part, acting with Nelson. The purpose of the conspiracy was wrongfully to obtain the cancellation of the mortgage. The wrongful result was to be accomplished by getting the members of the Din Torah to sign a written report which would show they had found that the mortgage should be discharged, although that report would not be in accordance with their finding.

The wrong of the defendants was made effective by the false statement made by them to the two innocent members of the Din Torah. This misstatement resulted in direct action by the latter in signing the decision which was made the basis for the institution of the Connecticut action to cancel the mortgage. That action required this plaintiff to show the fraud and deceit and that the written decision of the Din Torah was not the true decision. There, the present plaintiff established the falsity of the defendants' statement and its malicious character, and defeated the action, incurring the expenses now sought to be recovered.

The record presents, *first*, the question whether the plaintiff has any cause of action, and, *second*, if he has, whether the measure of his damage is the expense to which he was put in defending the Connecticut action.

It is an established rule of law that a false statement as to a material fact, made to induce a person to act and followed by actual damage, will support a cause of action. This rule is recognized in the following cases, among others:

In *Benton* v. *Pratt* (2 Wend. 385) plaintiff had agreed to sell to third parties 200 hogs. Plaintiff was driving them to the purchaser's place when he met the defendant, who also had a drove of hogs. Defendant, learning of plaintiff's mission, went to the parties who had agreed to buy plaintiff's hogs and stated that the plaintiff was not going to sell his hogs to them but to other parties and thus procured the third parties to buy defendant's hogs. Plaintiff was thus obliged to go further to procure a market, spent much time, and incurred considerable expense. The declaration contained several counts, one of them alleging that the false and fraudulent misrepresentation of the defendant was that the plaintiff had abandoned all idea of fulfilling his contract and would not fulfill it. The court (SUTHERLAND, J.) (at p. 389) said: " If the allegations in either of the counts in the declaration are true, the plaintiff has clearly sustained an essential injury from the act of the defendants, which he alleges was done fraudulently and with the intent to injure him; and, upon principle, the law ought to afford him redress." The finding in the cited case was that defendant had uttered an unqualified falsehood, with a fraudulent intent, as to a present or existing fact, and that a direct, positive and material injury resulted therefrom to the plaintiff, and the court held there was sufficient to sustain the action.

In *Upton* v. *Vail* (6 Johns. 181) the action was on the case, it being claimed that the defendant had falsely and deceitfully recommended a third party to the plaintiff as a man of property, whereby the plaintiff was induced to give credit to that party, with the result that he lost his debt. It was held that the false statement constituted a fraud or deceit and that the action would lie to recover plaintiff's damages. The opinion was written by KENT, Ch. J.

In *Rice* v. *Manley* (66 N. Y. 82) a third party had contracted, by parol, to sell and deliver to plaintiff a quantity of cheese, but being made to believe, by the fraud of defendant, that plaintiff did not want the cheese, he sold it to the defendant. Plaintiff's contract with the third party was not binding under the Statute of Frauds, but would have been performed had it not been for the fraud. It was held that the plaintiff had an action against the defendant.

In *Snow* v. *Judson* (38 Barb. 210) plaintiff sued to recover for damages sustained through the false statements intentionally made by defendant in regard to articles manufactured by the plaintiff, for the purpose of preventing sales by plaintiff of such articles, and which statements in fact did prevent such sales and injured plaintiff's business. It was held that plaintiff had a cause of action.

As the foregoing cases show, it is not necessary that the deceit should have been practiced directly upon the plaintiff. It is sufficient if the initial fraud intended to injure the plaintiff caused him damage through intermediate agencies thereby set in motion.

In *Al Raschid* v. *News Syndicate Co., Inc.* (265 N. Y. 1) the plaintiff claimed that the defendant maliciously circulated false information regarding him which was intended to and did result in his arrest and prosecution. The court stated that an action would lie upon those facts if they were properly pleaded, saying (at p. 3): " One may not be liable for malicious prosecutions and yet be legally responsible for maliciously circulating or giving false information resulting in intentional injury to another. Even a lawful act done solely out of malice and ill will to injure another may be actionable. (*Beardsley* v. *Kilmer*, 236 N. Y. 80.) "

In *Habeeb* v. *Daas* (111 Misc. 437) plaintiff and defendant had been friends for years. Defendant sent plaintiff goods, asking him to keep them for him and saying they were his goods. This statement was false, because defendant and other people had in fact stolen the goods, but defendant concealed from the plaintiff that fact and plaintiff did not know it and kept the goods for some days when defendant removed them. Later, the plaintiff was arrested, charged with the theft of the goods and with the crime of having criminally received them. His arrest and prosecution were brought about solely by reason of his possession of the goods. It was held that the plaintiff had a cause of action. That case was affirmed by the Appellate Division (196 App. Div. 974) upon the opinion below.

*Burrows* v. *Rhodes & Jameson* (L. R. 1 Q. B. [1899] 816) is another interesting case. The defendants were connected with a British company that was operating in South Africa. The plaintiff had been employed by that company, serving in its armed forces within the territorial limits prescribed by its charter. When his term of service was about to expire, the defendants, having secretly determined to invade the territory of the South African Republic with a hostile armed force, fraudulently represented to the plaintiff, in order to induce him to renew his engagement and take part in such invasion, that the detachment in which he was serving was about to be employed in active service, and that it would be to his benefit to continue in the service of the company, and they requested him to do so. The defendants intended the plaintiff to believe, and he did believe, that the service in which the detachment was about to be employed was of a lawful nature, and, relying upon those representations, the plaintiff agreed to and did continue in the company's service for a future period.

The representations made by the defendants were false and were known by them to be false. Shortly after the plaintiff had made the new agreement, the defendants caused a number of troops in the employ of the company, including the detachment in which the plaintiff was serving, to be concentrated at a location under the control of one of the defendants, for the purpose of the invasion; and in order to induce the plaintiff to take part therein, and to enter the territory of the South African Republic as a member of the company's armed forces, defendants fraudulently represented to the plaintiff that fighting was about to commence in or near Johannesberg, that protection was needed for the women and children there, that a body of soldiers of Her Majesty the Queen of England was also waiting near the frontier of the republic to join and co-operate with the other troops, and that the proposed invasion had the sanction of Her Majesty's government. These representations were untrue to the knowledge of the defendants when they were made. Plaintiff, however, believing them to be true, and relying upon them, was induced thereby to enter the territory of the South African Republic as a member of the company's armed forces, and to engage in hostilities with the troops of the republic, by reason of which he suffered great injury, being severely wounded in a battle, losing his leg, being taken and kept a prisoner by the authorities of the republic and becoming liable to severe punishment for offenses against the laws of England, and being brought to England as a prisoner. For his pain and suffering and impaired capacity for earning his livelihood, together with items of special damage, such as loss of kit and loss of pay, he brought suit. A demurrer to the complaint on the ground that it did not allege a cause of action was overruled.

It seems clear, under the general rules above stated, that the willful and intentional deceit practiced by defendants upon the innocent members of the Din Torah, in inducing their signatures to a fictitious decision, supports this action for damages sustained by the plaintiff through agencies set in motion by the initial wrong.

This brings us to the next question, and that is as to the nature of the damages that may be recovered. And the specific query is whether damages in the nature of expenses incurred in establishing his defense to the Connecticut action are recoverable by the plaintiff in an action brought directly for that purpose.

It must be remembered that the defendants' acts here were willful and malicious. The rule of law based upon such an act is stated in *Garrison* v. *Sun Printing & Publishing Co.* (207 N. Y. 1, at p. 8) as follows: " I think the rule must be regarded as well recognized that in an action brought for the redress of a wrong

intentionally, willfully and maliciously committed, the wrongdoer will be held responsible for the injuries which he has directly caused even though they lie beyond the limit of natural and apprehended results as established in cases where the injury was unintentional." That was an action to recover damages for a libel.

There is also a general rule that a plaintiff ordinarily is not entitled to recover in a separate and subsequent action the costs and expenses incurred by him in the prior action, although the necessity for his bringing the prior action, or the result of his being cast therein, was caused by the wrongful act of the defendant. (*Marvin* v. *Prentice*, 94 N. Y. 295; *Bishop* v. *Hendrick*, 82 Hun, 323, 334, 337; affd. on opinion below, 146 N. Y. 398; *Lurman* v. *Jarvie*, 82 App. Div. 37, 45, 46.) In the last cited case (*Lurman* v. *Jarvie*) the opinion states the rule to be as above set forth " in the absence of malice."

The difficulty, if any there be, lies in determining the limitation of the above rule, or, if it be deemed a general rule, the facts and circumstances which bring a particular case without its scope. That there are exceptions is well established. Thus, where the prior suit was instituted maliciously and without reasonable grounds, the plaintiff in a subsequent action for malicious prosecution or false arrest may recover for the expense of his defense in the prior action. (*Sheldon* v. *Carpenter*, 4 N. Y. 579; *Worden* v. *Davis*, 195 id. 391.)

It is true that the present action is not in form one for malicious prosecution or false imprisonment. But it is equally true that the Connecticut action brought against this plaintiff was based upon a prior malicious, willful wrong, perpetrated by the defendants for the specific purpose of constituting a basis for that action. In other words, the very purpose of defendants' malicious and wrongful deceit was to procure a fictitious decision which should serve as the basis for the action to be brought by Nelson to cancel the mortgage. Therefore, the costs and expenses of defending that action must be deemed to have been not only the natural and probable result of defendants' malicious and intentional wrong, but also to have been within their contemplation.

Under such circumstances, it would seem the recovery of expenses of litigation as damages should not be limited to a particular form of action, such as one for false arrest or malicious prosecution. Such a limitation would sacrifice justice to form. In holding that items of expense of this character, occasioned by an intentional and malicious wrongful act, were recoverable in actions for false arrest or malicious prosecution, the courts seemingly did not intend to limit such recovery to these specific actions. This con-

clusion finds sanction in cases where such a recovery has been had although the action was not one for false arrest or malicious prosecution.

Thus, in *O'Horo* v. *Kelsey* (60 App. Div. 604), where plaintiff sought to recover damages for various wrongs committed by the defendant, namely, in attempting to take possession of certain premises which plaintiff was occupying, making false statement to induce another person to remove plaintiff from the premises by force, and, failing in that, attempting to obtain a process of the court by which to accomplish the same purpose, knowing that he was not legally entitled thereto, it was held that the plaintiff was entitled to recover all the damages sustained in consequence of the several acts mentioned. The damages included the value of attorney's services in defending the summary proceedings instituted by the defendant. (See, also, *Abounader* v. *Strohmeyer & Arpe Co.*, 217 App. Div. 43; affd., 243 N. Y. 458, see p. 467.)

Aside from the authorities, however, there seems to be no logical reason for confining the recovery of expenses of prior litigation, occasioned by an intentional malicious act, to cases where the prior litigation was a prosecution upon a criminal charge, or was an action to recover a penalty for a statutory violation, or was otherwise a proceeding, or action, criminal or quasi criminal in character. Property rights and rights of persons are equally the subject of constitutional protection. The necessity of protecting either right may be occasioned by the perpetration of the same initial wrong. The right of the injured party to appeal to the courts for the preservation of either right is co-extensive with his right to similarly appeal for the protection of the other. It must follow that the damage sustained by way of expense in defending the one right is exactly similar in character to the damage sustained in the defense of the other right. In each case the damage so sustained, in the form of legal expenses, comes within the purview of the fundamental rule, which casts upon a tort feasor liability for such damages as naturally flow from his wrongful act, whether or not within his contemplation.

In the present case the defendants, together with Nelson, participated in the original fraud, to the end that its accomplishment might serve as a basis for a subsequent action to be brought by Nelson in which he attacked a property right of this plaintiff. The conspirators, therefore, contemplated the ensuing damage. They should not escape the consequence of their fraud because the Connecticut action was civil and not criminal in character. (17 C. J. 809, § 135.)

The above principle has been applied in a number of cases. So legal expenses have been held recoverable where the managing director of a corporation had wrongfully taken a lease in his own name instead of in that of the corporation (*McGaw* v. *Acker, Merrall & Condit Co.*, 111 Md. 153; 73 A. 731); where they had been incurred in an unsuccessful suit to enforce the specific performance of a contract for the sale of real property, which contract had been entered into because of the false representations of the defendant (*Feldmesser* v. *Lemberger*, 101 N. J. L. 184; 127 A. 815); where the expenses were incurred in the defense of an action on a note (although the defense was unsuccessful), the note having been made because of the misrepresentations of the defendant's agents (*McOsker* v. *Federal Insurance Co.*, 115 Kan. 626; 224 P. 53); and where the wrongful acts and fraud of the defendant involved the plaintiff in litigation (*Weinhagen* v. *Hayes*, 179 Wis. 62; 190 N. W. 1002).

There are also decisions in this and other jurisdictions where damages of this character, sustained in the prosecution or defense of prior actions, not criminal or quasi criminal in character, have been held to be recoverable upon the theory that the expenses of the prior litigation were incurred in an attempt by the injured party to meet the duty, cast upon him by law, to minimize the damages sustained by the original wrong. This, in fact, is the situation here disclosed. Had the present plaintiff not defended the Connecticut action, the result might have been a decree adjudging the nullity of the mortgage. However, by defending the Connecticut action and proving the initial fraud, the damages were reduced from the face value of the mortgage to the expenses incurred in the defense of the action. This situation seems to come within the rule of the following authorities:

In *Muller* v. *Rosenblath* (157 App. Div. 513) a grantee was fraudulently induced to execute a purchase-money mortgage containing a provision that it should become immediately due if the property was sold. It was held that the grantee might recover the damages caused by the fact that when he desired to sell the premises he was put to expense in raising money to pay the mortgage and to get another mortgage in its stead. (See p. 518.)

In *Hynes* v. *Patterson* (95 N. Y. 1) it was held that the value of real estate owned by the plaintiff, which was taken from him to pay judgments recovered upon converted notes, was a proper measure of his damage; also that counsel fees paid by plaintiff in compromising a creditor's action brought to obtain that real estate were part of such damages.

In *Myers* v. *Adler* (188 Mo. App. 607; 176 S. W. 538) an agent of the plaintiff led the latter, through fraud, into signing a contract whereby the plaintiff was placed in a situation in which, if the contract were carried out, he would lose a large sum of money. He learned the true situation in time to rescind the contract and to refuse to perform it, but had to expend a less sum of money in defense of a suit for specific performance, which he finally won. It was held that the expenses thus incurred were recoverable as damages in an action against his agent. (See pp. 615, 616.)

In *Boyles* v. *Burnett* (213 Mo. App. 288; 249 S. W. 719) the action was for damages for fraud in depriving the plaintiff of land. She sought reimbursement for expenses incurred in an effort to recover possession of her land. It was held that the allowance of items of expense, consisting of traveling expenses, hotel bills and the like, as well as attorney's fees, was proper.

There are also cases where a breach by the defendant of a contract between him and the plaintiff has resulted in a judgment being obtained against the plaintiff in a prior action. In these cases the plaintiff has been permitted to recover of the defendant, in a subsequent action, the amount of damages awarded against him in the prior action, and also the legal expenses incurred by him in defending that action, especially where the defendant has been requested to come in and defend. Cases of this type are: *Carleton* v. *Lombard, Ayres & Co.* (19 App. Div. 297; affd. on opinion below, 162 N. Y. 628); *Dubois* v. *Hermance* (56 id. 673). The theory of such cases seems to be that the defendant must be deemed to have contemplated that the breach of his contract with the plaintiff might subject the latter to damages in an action by a third party, and, therefore, he is deemed in law to have impliedly agreed to become responsible therefor; or at least that such damages must be deemed to have been within his contemplation as naturally flowing from his own breach of contract.

The imposition of liability upon either ground seems to find as great sanction in conscience as does the predication of such liability upon the rule of natural justice that no one shall willfully and intentionally injure another.

The judgment should be affirmed, with costs.

LEWIS and JOHNSTON, JJ., concur.