Plaintiff, Blue Cross and Blue Shield of Alabama ("Blue Cross"), appeals that part of the trial court's judgment awarding attorney fees to the defendant, Roberta Faggard. Co-defendant Commercial Union Insurance Company ("Commercial Union") appeals the summary judgment in favor of Blue Cross on Blue Cross's subrogation claim. We affirm.
Noah D. Faggard and his wife, Roberta Faggard, were insured by Blue Cross for health care services. On November 1, 1983, Roberta was involved in an automobile accident with a vehicle owned and operated by Butts and Billingsley Construction Company ("Butts and Billingsley"), which was insured by Palomar Insurance Corporation, a division of Commercial Union. As a result of the accident, Roberta was hospitalized and received medical care in the total amount of $14,023.65, which amount was paid by Blue Cross.
On May 8, 1984, Blue Cross notified Butts and Billingsley's insurer of Blue Cross's total liability at that time and that it had a subrogation interest in any monies paid to the Faggards. Commercial Union responded with a letter dated May 24, 1984, which requested supporting documentation to establish Blue Cross's subrogation rights. Blue Cross was advised in the same letter that "subject to receipt of the information requested in the above paragraph [the subrogation documents] your *Page 1369 
subrogation interest will be protected." Blue Cross presented an unsigned letter dated June 14, 1984, which purported to supply the information requested by Commercial Union. Commercial Union does not dispute that it received the requested subrogation documentation.
On October 25, 1984, six days before the running of the statute of limitations, Roberta sued Butts and Billingsley for injuries arising as a result of the automobile accident. On December 6, 1985, a jury returned a general verdict in favor of Roberta in the amount of $27,500. On December 18, 1985, Commercial Union telephoned Blue Cross and advised it that Commercial Union was about to deliver a check to Roberta and her attorney. Later that afternoon, the check was indeed delivered.
On January 14, 1986, Blue Cross made a demand on the Faggards for $14,023.65 — the amount that Blue Cross had previously paid the Faggards for hospital and medical expenses. The Faggards, on advice of their counsel, refused to pay Blue Cross, whereupon Blue Cross filed suit on June 27, 1986, against the Faggards and Commercial Union for $14,023.65, based on its alleged right of subrogation. On September 9, 1987, the trial judge denied the Faggards' and Commercial Union's motion for summary judgment and granted summary judgment in favor of Blue Cross in the net amount of $10,284.01. This was the amount of subrogated medical expenses ($14,023.65) less 1/3 for attorney fees ($4,674.55) plus interest at 6% ($934.91). Both Blue Cross and Commercial Union appeal, raising the following issues:
 I. Whether the trial court erred in deducting a pro rata share from Blue Cross's judgment against the Faggards and Commercial Union for attorney fees.
 II. Whether the trial court erred in entering summary judgment in favor of Blue Cross and against Commercial Union and in denying summary judgment in favor of Commercial Union and against Blue Cross.
We begin our discussion by stating when summary judgment is appropriate:
 "Summary judgment is properly granted when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law.
". . . .
 "On appeal from a summary judgment, this court must look to the same factors considered by the trial court in its ruling on the motion."
Smith v. Citicorp Person-to-Person Financial Centers, Inc.,477 So.2d 308, 309 (Ala. 1985) (citations omitted); Rule 56, Ala. R.Civ.P.
We address, first, Blue Cross's contention that the trial court's awarding of attorney fees out of its subrogation interest was error. We can find no error in the trial court's award of attorney fees. We hold that the injured party (Blue Cross's insured) is entitled to deduct Blue Cross's pro rata share of the litigation costs and attorney fees from the sum that Blue Cross is entitled to recover by way of reimbursement. Under the one-third contingent fee arrangement that the Faggards had with their attorney in the tort action, Blue Cross's net reimbursement recovery is reduced to $10,284.01, after crediting the injured insured with its pro rata share of the total fee, i.e., $4,674.55 of the $11,000 in attorney fees. Therefore, because Roberta has already satisfied the obligation to pay the $11,000 in attorney fees, she is entitled to credit for Blue Cross's pro rata share of $4,674.55. To hold otherwise would permit unjust enrichment of the insurance carrier at the expense of its injured insured. See, generally, MarylandCasualty Ins. Co. v. Tiffin, 537 So.2d 469 (Ala. 1988), for a discussion of the application of the common fund doctrine.
In its appeal, Commercial Union argues that the trial court erred in entering summary judgment in favor of Blue Cross. Commercial Union contends that there is no legal duty that requires it to protect Blue Cross's subrogation interest in the payment of a judgment entered pursuant to a jury verdict in favor of Roberta. While Commercial Union recognizes Blue Cross's right of subrogation, it argues that *Page 1370 
this right runs from the insured (Roberta Faggard) to the insurer (Blue Cross) and does not affect the rights and obligations of the third-party tort-feasor. Additionally, says Commercial Union, this right is one created in contract and, absent a contractual relationship, Alabama common law does not recognize a right of subrogation for proceeds paid under life and accident insurance policies.
Commercial Union's claim is without merit. The subrogation section of the Faggards' policy with Blue Cross states:
 "In the event of payment or provision otherwise by the Administrator of any benefits under the Plans for Northern Operations and Bay Minette, the Administrator shall, to the extent thereof, be subrogated and shall succeed to all rights of recovery (whether in contract, tort, or otherwise) which the Member or any other person has against any person or organization and shall be subrogated and succeed to the proceeds of any settlement or judgment that may result from the exercise of any such rights of recovery. Upon payment or provision by the Administrator of any such benefits, the Member or any other person having any rights of recovery or proceeds therefrom shall execute and deliver such instruments or papers and do whatever else is necessary to secure to the Administrator such rights of recovery and proceeds and shall do nothing to prejudice such rights."
Alabama has recognized the validity of such subrogation clauses in an insurance policy. See Palmer v. Blue Cross/BlueShield of Alabama, 460 So.2d 199 (Ala.Civ.App. 1984). The ability to recover under such clauses must rest in contract.
The Court of Civil Appeals dealt with the issue of when the right to subrogation is lost, in Miller v. Auto-OwnersInsurance Co., 392 So.2d 1201 (Ala.Civ.App. 1981). That court stated:
 "[O]ur courts have adopted the rule that an insurance company's right to subrogation is lost as against a wrongdoer who, without notice of the insurer's rights, settled with and was released from liability by the insured. A statement found at 46 C.J.S. Insurance § 1209 at 155 (1946) expresses both that rule and the natural converse thereof.
 " 'When a wrongdoer chargeable with notice of insurer's rights as subrogee of the insured makes a settlement with insured to which insurer is not a party, the settlement will be regarded as having been made subject to the rights of the insurer, and without destruction thereof; but a general release by insured to a third person without notice or knowledge of the insurance company's rights is a bar to the company's claim to subrogation.' Having made a thorough review of the authorities, we believe the correct and applicable rule to be consistent with the statement set forth above. Thus, if the tortfeasor has notice or knowledge of the insurer's rights as subrogee at the time the release is executed by the insured, that release will be regarded as subject to the rights of the insurer-subrogee. If, on the other hand, the tortfeasor is without notice or knowledge of those rights at the time of execution of the release, the release will act as a bar to the insurer-subrogee's claim. The question, therefore, is reduced to one of notice or knowledge."
392 So.2d at 1203 (citation omitted). It is undisputed that Commercial Union had knowledge or notice of Blue Cross's right of subrogation. It can therefore be said that any settlement between the tort-feasor's insurer and the injured party would be made subject to the rights of the injured party's insurer. Commercial Union, however, argues further that its payment was not made pursuant to settlement but pursuant to a lawfully entered judgment based on a jury verdict. This fact, it argues, should relieve it of further liability in the obligation as it now exists between Roberta and Blue Cross. However, in this case, where Commercial Union had agreed to protect Blue Cross's subrogation interest and where it elected to pay the amount of the judgment by check directly to the injured party, we can find no distinction in *Page 1371 
that obligation as between a judgment and a settlement.
By so holding, we express no opinion with respect to the judgment debtor's further obligation to the subrogee where the payment is made directly to the court in satisfaction of the judgment. But, where, as here, the tort-feasor's insurer promises to protect the subrogation rights of the injured party's insurer and then elects to pay the amount of the judgment directly to the judgment creditor, the tort-feasor's insurer cannot discharge its contractual obligation merely by notifying the subrogee of such payment.
Due to the foregoing, the summary judgment in favor of Blue Cross is due to be, and it is hereby, affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, JONES, SHORES, ADAMS, HOUSTON and KENNEDY, JJ., concur.