17 F.3d 1081
 17 Employee Benefits Cas. 2361
 Trustees of the CENTRAL STATES, SOUTHEAST AND SOUTHWEST
AREAS HEALTH AND WELFARE FUND, Plaintiff-Appellant,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, State Farm
Fire and Casualty Insurance Company and State Farm
General Insurance Company, Defendants-Appellees.
CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS HEALTH AND
WELFARE FUND, an Illinois Trust, Plaintiff-Appellee,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY and State
Farm Fire and Casualty Insurance Company,
Defendants-Third/Party Plaintiffs-Appellants,
v.
TRINIDAD ORTEGA, Individually, and as Guardian of Gabino
Ortega, a minor, Ronald Willis, and Seymour
Fishman, Third/Party Defendants-Appellees.
 Nos. 93-1453, 93-1516.
 United States Court of Appeals,
Seventh Circuit.
 Argued Nov. 10, 1993.
Decided March 7, 1994.
Rehearing and Suggestion for
Rehearing In Banc Denied
April 20, 1994.
 
 James L. Coghlan (argued), John A. Kukankos, Anita M. D'Arcy, Julia A. Bruckner, Elizabeth A. Longo, Coghlan, Joyce, Kukankos & D'Arcy, Chicago, IL, for Central States, Southeast and Southwest Areas Health and Welfare Fund.
 James J. Hoffnagle, Frank C. Stevens, John R. Adams (argued), Taylor, Miller, Sprowl, Hoffnagle & Merletti, Chicago, IL, for State Farm Mut. Auto. Ins. Co., State Farm Fire and Cas. Ins. Co., and State Farm General Ins. Co.
 Michael T. Mullen, John C. Mullen, Christopher Mullen, Mary R. Minella, Mullen & Minella, Chicago, for Ronald Willis.
 Before GIBSON,* COFFEY and RIPPLE, Circuit Judges.
 COFFEY, Circuit Judge.
 
 
 1
 The Trustees of the Central States, Southeast and Southwest Areas Health and Welfare Fund appeal the grant of summary judgment in favor of State Farm Mutual Automobile Insurance Company, State Farm Fire and Casualty, and State Farm General Insurance Company ("State Farm"). State Farm cross-appeals the denial of its motion for leave to file a third-party complaint. We affirm the grant of summary judgment and dismiss the cross-appeal.
 
 FACTS AND PROCEDURAL BACKGROUND
 
 2
 The Trustees administer a Welfare Fund, a self-funded employee welfare benefit plan within the meaning of ERISA. The Fund provides medical and other benefits to participating employees and their dependents residing in 37 states (the "covered individuals"). The Fund offers several plans, each of which provides benefits pursuant to written documents known as plans. Each plan provides that upon payment of benefits to a covered individual, the Welfare Fund becomes "subrogated to" certain rights of recovery that the covered individual may have against any responsible person or entity.
 
 
 3
 The Trustees' amended complaint alleged that in a number of instances in which covered individuals suffered accidental injuries, the Fund paid the covered individuals' medical expenses, notified State Farm of its subrogation rights, and that nevertheless, State Farm settled claims with the covered individuals and refused to pay to the Fund the value of the Fund's subrogation rights.[1] The Trustees' complaint requested an injunction seeking to require State Farm to settle the Welfare Fund's subrogation rights prior to or at the same time (simultaneously) State Farm settled with the Fund's covered individuals and the imposition of a constructive trust for the amount of the Fund's subrogation interest.[2] State Farm admitted executing settlements and releases with the covered individuals after receiving notice of the Fund's subrogation interest, but claimed that because it was not a party to the Fund's subrogation agreement it was not under an obligation to settle claims with the Fund. State Farm filed a third-party complaint against three designated covered individuals for indemnification in the event that it was ordered to pay damages to the Welfare Fund.
 
 
 4
 Each party filed a motion for summary judgment. The district court granted the motion of State Farm and denied the Trustees' motion, finding that nothing in the plan document or ERISA required State Farm to settle the Welfare Fund's subrogation claims and the claims of covered individuals simultaneously, and therefore refused to enjoin State Farm from its practice of independent settlement with covered individuals. The district judge also found no authority to support the Trustees' claim that they were entitled to a constructive trust. Finally, the court dismissed State Farm's third-party complaint after finding that it was without in personam jurisdiction over the third-party defendants.ISSUE
 
 
 5
 State Farm has admitted that it settled with the covered individuals despite receiving notice of the Fund's subrogation interest. The sole issue is whether the district judge correctly determined that State Farm did not violate the plan's terms or ERISA by refusing to settle with the Fund prior to or at the same time State Farm settled with the covered individuals.
 
 Standard of Review
 
 6
 Initially we address the Trustees' contention that the usual de novo standard of review in summary judgment cases is inapplicable because the arbitrary and capricious standard is used when reviewing Trustees' interpretations of Welfare Funds' plan terms. While we agree with the Trustees that "[t]rust principles make a deferential standard of review appropriate when a trustee exercises discretionary powers," Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 111, 109 S.Ct. 948, 954, 103 L.Ed.2d 80 (1989), the United States Supreme Court was careful to observe in Firestone that "[a]s they do with contractual provisions, courts construe terms in trust agreements without deferring to either party's interpretation." Id. at 112, 109 S.Ct. at 955. The Court continued:
 
 
 7
 "The extent of the duties and powers of a trustee is determined by rules of law that are applicable to the situation, and not the rules that the trustee or his attorney believes to be applicable, and the terms of the trust as the court may interpret them, and not as they may be interpreted by the trustee or by his attorney."
 
 
 8
 Id. (quoting 3 W. Fratcher, Scott on Trusts Sec. 201, at 221 (4th ed. 1988)) (Supreme Court's emphasis).
 
 
 9
 Deferential review is appropriate only when the trust instrument allows the trustee to interpret the instrument and when the trustee has in fact interpreted the instrument. See Firestone, 489 U.S. at 111, 109 S.Ct. at 954-55. The Trustees have failed to cite any authority for their novel proposition, nor have we discovered any, that Firestone requires deferential review when the Trustees' actions implicate the rights of third parties like State Farm who are not parties to the Fund's agreement with its covered individuals. Thus we reject the Trustees' argument that their interpretation of the plan's subrogation terms must be reviewed under a deferential standard. Rather, in review of summary judgments, we adhere to Fed.R.Civ.P. 56 and this circuit's case law:
 
 
 10
 Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' Fed.R.Civ.P. 56(c). This court reviews 'issues decided on summary judgment de novo, and ... resolve[s] all reasonable inferences in favor of the nonmoving party,' Kennedy v. United States, 965 F.2d 413, 417 (7th Cir.1992)[.] ... Rule 56(c) requires entry of summary judgment if the non-moving party fails to come forth with evidence to refute the allegations of the moving party in the motion for summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 322-24, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986).
 
 
 11
 Hickey v. A.E. Staley Manufacturing, 995 F.2d 1385, 1388 (7th Cir.1993).
 
 DISCUSSION
 
 12
 The Trustees argue that the plan's terms require that the Fund's subrogation rights be settled prior to or at the time of any settlement with covered individuals. Advancing this argument the Trustees contend that State Farm is required to settle claims with covered individuals as well as the Fund simultaneously, so long as State Farm has received the notice of the Fund's subrogation rights. We disagree.
 
 
 13
 It is undisputed that the plan's subrogation terms require the covered individual to comply with his contractual obligation to protect the Fund's subrogation claim (for example, by executing and delivering instruments and papers, by joining the Fund in claims or actions against responsible third parties, and by providing information that the Welfare Fund deems necessary to the protection of its subrogation rights). The Trustees, however, have failed to identify any language either in the plan, or in ERISA imposing an obligation upon State Farm (or parties similarly situated.) The very terms of the plan of necessity speak only to the obligations of covered individuals. Because State Farm was not a party to the agreement between the Fund and its covered individuals, State Farm cannot be bound by that agreement. Although 29 U.S.C. Sec. 1109(a) provides remedies for breach of fiduciary duty, State Farm did not breach a fiduciary duty as it was not the Fund's agent. See Pohl v. National Benefits Consultants, Inc., 956 F.2d 126, 128 (7th Cir.1992) ("[a] fiduciary is an agent who is required to treat his principal with utmost loyalty and care"); 29 U.S.C. Sec. 1002(21)(A)(i). Because State Farm is under no obligation to recognize the Fund's subrogation rights prior to or at the time State Farm settles with the Fund's covered individuals, the court properly refused the Trustees' request for injunctive relief.
 
 
 14
 The Trustees also argue, erroneously, that they have been "precluded from enforcing [the Welfare Fund's] subrogation plan terms." Contrary to the Trustees' contention, however, State Farm has interfered with neither the Trustees' rights and duties to administer the Welfare Fund nor its subrogation policies. Moreover, State Farm's settlement with the Fund's covered individuals did not extinguish the Trustees' subrogation rights. 16 George J. Couch et al., Couch on Insurance 2d, Sec. 61:201, at 261, 265 (2d ed. 1966) (release given by subrogor does not bar the subrogee's claim, so long as the defendant was on notice of the subrogee's claim before the release was given). The Trustees are in the same position as they have always been with respect to their ability to enforce their rights of subrogation. The covered individuals are still required to abide by the plan's subrogation terms and may be held accountable to the Fund if they disregarded their contractual obligation to the Welfare Fund to abide by the plan's terms.
 
 
 15
 Finally, we reject the Trustees' argument that the district court should have imposed a constructive trust on State Farm over the money State Farm paid to the covered individuals. State Farm did not act wrongfully; we conclude that under the circumstances the district court properly refused to impose the equitable remedy of a constructive trust.
 
 CONCLUSION
 
 16
 Because neither the plan nor ERISA required State Farm to settle claims with the Welfare Fund prior to or at the time of any settlement with covered individuals and because State Farm's settlement with the covered individuals did not infringe the Fund's subrogation rights, we hold the district judge correctly granted State Farm's motion for summary judgment and denied the Trustees' motion for summary judgment. Because the plan's terms do not impose upon State Farm an obligation of simultaneous settlement, the Trustees are not entitled to an injunction prohibiting State Farm's actions. Inasmuch as our holding makes State Farm's cross-appeal against the third-party defendants moot, we dismiss the cross-appeal.
 
 
 17
 The judgment is affirmed.
 
 
 
 *
 The Honorable Floyd R. Gibson of the Eighth Circuit is sitting by designation
 
 
 [1]
 The Trustees sued under 29 U.S.C. Sec. 1132(a)(3), which provides that "[a] civil action may be brought ... by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or terms of the plan[.]"
 
 
 [2]
 The complaint also sought damages, costs, and attorney fees