Carolyn BAXTER and Eddy Baxter, Sr., Fraternal Ins. Co., Inc., and GAB Robins North America, Inc., Appellants–Defendants,

v.

I.S.T.A. INSURANCE TRUST, Appellee–Plaintiff.

No. 10A01–0009–CV–318.

Court of Appeals of Indiana.

May 3, 2001.

Laura S. Reed, Riley Bennett & Egloff, Indianapolis, IN, Attorney for Appellant Fraternal Ins. Co., Inc.

Gene Lynn Humphreys, Ogden Newell & Welch, Louisville, KY, Attorney for Appellant GAB Robins North America, Inc.

Richard J. Darko, Christina D. Arvin, Lowe Gray Steele & Darko, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BROOK, Judge.

### Case Summary

Appellants-defendants Fraternal Insurance Company, Inc. ("Fraternal") and GAB Robins North America, Inc. ("GAB") appeal the trial court's order denying their respective motions for summary judgment. We affirm in part and reverse in part.

### Issues

We restate the three issues presented for our review as follows:

I. whether the trial court erred in denying Fraternal's motion for summary judgment regarding whether appellee-plaintiff I.S.T.A. Insurance Trust ("ISTA") has a right to subrogation;

II. whether the trial court erred in denying Fraternal's and GAB's summary judgment motions on the fraud claim brought by ISTA; and

III. whether the trial court erred in denying Fraternal's motion for summary judgment on ISTA's breach of duty of subrogation claim.

### Facts and Procedural History

On October 8, 1996, Eddy Baxter, Sr. ("Eddy") was severely burned by hot grease from a fryer in an accident at the

Moose Lodge # 1757 ("Moose Lodge"). Fraternal, which insured Moose Lodge, hired GAB to provide limited services in adjusting Eddy's claim against Moose Lodge. ISTA is an employee benefit trust regulated by the Employee Retirement Income Security Act of 1974 ("ERISA"). *See* 29 U.S.C. § 1001 *et seq.* Eddy and his wife, Carolyn Baxter ("Carolyn"), (collectively, "the Baxters"), are beneficiaries of ISTA's group health benefit plan.

The Baxters submitted to GAB documents, which indicated that they had received $3,192.34 in benefits from ISTA. Consequently, Fraternal paid the Baxters $5,000 for medical expenses without requiring that they sign a release. Although the Baxters made a demand against the Moose Lodge for a far greater amount, Fraternal eventually paid them $50,000 for pain and suffering and required them to sign a release containing the following language:

> In making this Release it is understood and agreed the undersigned relies wholly upon the undersigned's judgment, belief, and knowledge of the nature, extent, effect, and duration of said injuries and liability therefore and is made without reliance upon any statement or representation of the Lodge or its representatives or by any physician or surgeon by them employed.

ISTA eventually paid approximately $130,000 for Eddy's medical expenses arising from his injury at Moose Lodge. Despite the existence of a subrogation clause in ISTA's group health benefit plan, the Baxters have not reimbursed ISTA with any portion of the $55,000 received from Fraternal.

Upon learning of the $55,000 payment and the failure to reimburse ISTA for any amounts it had paid, ISTA sued the Baxters in March 1998. In an amended complaint, ISTA added Fraternal and GAB as defendants, alleged a theory of fraud and misrepresentation against both, and asserted breach of duty to protect subrogation interest against Fraternal. Fraternal and GAB filed motions for summary judgment. On June 13, 2000, the court held a hearing on the motions, and ISTA filed another amended complaint. In an order without explanation, the court denied summary judgment. Fraternal and GAB filed an interlocutory appeal of this order.

### Discussion and Decision

#### *I. Right of Subrogation*

■ Fraternal asserts that the trial court erred by denying its motion for summary judgment regarding ISTA's claimed contractual right of subrogation. We address this issue first because if ISTA had no right to subrogation it would have no claim for fraud or breach of duty against Fraternal or GAB since it would have suffered no injury. *See Gonderman v. State Exchange Bank, Roann,* 166 Ind.App. 181, 191, 334 N.E.2d 724, 730 (1975) (noting that fraud without injury does not give rise to cause of action); *Fast Eddie's v. Hall,* 688 N.E.2d 1270, 1272 (Ind.Ct.App.1997) ("absent a duty, there can be no negligence"), *trans. denied.*

We recently set forth the summary judgment standard of review:

> The purpose of summary judgment is to end litigation where no factual dispute exists and which may be determined as a matter of law. On review of a trial court's decision to deny summary judgment, our standard of review is well settled. We apply the same standard of review as the trial court: we must decide whether there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law.

> Summary judgment is appropriate only if "the evidence sanctioned by Ind.

Trial Rule 56(C) shows that there is no genuine issue of material fact and the moving party deserves judgment as a matter of law." The party moving for summary judgment has the burden of making a prima facie showing that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. Once these two requirements are met by the moving party, the burden then shifts to the non-moving party to show the existence of a genuine issue by setting forth specifically designated facts. Any doubts as to any facts or inferences to be drawn therefrom will be resolved in favor of the non-moving party.

*Ling v. Stillwell,* 732 N.E.2d 1270, 1273–74 (Ind.Ct.App.2000) (citations omitted), *trans. denied.*

 We analyze insurance contracts as follows:

The interpretation of an insurance policy, as with other contracts, is primarily a question of law for the court, even if the policy contains an ambiguity needing resolution. A court may not rewrite an insurance contract. If an insurance contract is clear and unambiguous, the language must be given its plain meaning. However, if there is an ambiguity, the policy should be interpreted most favorably to the insured, and construed to further the policy's basic purpose of indemnity. Ambiguity in an insurance policy exists when the language is susceptible to more than one interpretation and reasonably intelligent persons could honestly differ as to the meaning of the policy language.

*Estate of Eberhard v. Illinois Founders Ins. Co.,* 742 N.E.2d 1, 2 (Ind.Ct.App.2000) (citations omitted). "Courts will make all attempts to construe the language in a contract so as not to render any words, phrases, or terms ineffective or meaningless." *Id.* at 3.

ISTA's group health benefit plan contains the following provision:

## SUBROGATION

In the event of any payment under the plan to any Covered Person, the Plan may, as set forth in the Schedule of Benefits, to the extent of such payment be subrogated, unless otherwise prohibited by law, to all the rights of recovery of the Covered Person arising out of any claim or cause of action which may accrue because of alleged negligent conduct of a third party. Any such Covered Person hereby agrees to reimburse the Plan for any payment so made, hereunder, out of any monies recovered from such third party as the result of such information and assistance, and to execute and deliver all necessary instruments as the Plan Administrator may require to facilitate the enforcement of the Plan's rights and not to prejudice such rights. Such subrogation rights shall extend only to the recovery by the Company of the benefits it has paid for such hospitalization and treatment, and the Company shall pay fees and costs associated with the enforcement of the Plan's rights.

In asserting that ISTA has no subrogation right, Fraternal[1] focuses upon the word "may" and the placement of the clause thereafter. Fraternal argues:

the phrase "as set forth in the schedule of benefits," modifies the word "may." As written, the provision permits subrogation "as set forth in the schedule of benefits." ISTA has not pointed to anything in the schedule of benefits which requires or permits subrogation, and

---

1. GAB does not discuss this issue.

therefore ISTA had no right to subrogation and suffered no injury.

Fraternal's brief at 19.

We agree that the subrogation clause could have been written more clearly, for example using "shall" or "is" rather than "may." We also note that the remainder of the plan does not mention specifically subrogation. However, we do not view the contract as ambiguous in the sense that reasonable minds could honestly differ as to its meaning. Rather, we observe that the plan provides certain limits and sets out percentages that it will pay under various circumstances. The plain meaning of the subrogation clause in the context of the plan is that ISTA is entitled to subrogation in accordance with the amounts it pays out. Further, ISTA would never be entitled to subrogation under the interpretation advocated by Fraternal, thus rendering the subrogation clause meaningless. We are not inclined to read the contract in such a manner. *See Eberhard,* 742 N.E.2d at 3 (disagreeing with interpretation of contract that would render an exclusion meaningless). Therefore, we conclude that the trial court properly denied summary judgment on this issue.

## II. Fraud Claim

Fraternal and GAB contend that the court erred in denying summary judgment on ISTA's fraud claim because none of the alleged misrepresentations were made to or relied upon by ISTA. ISTA argues that Fraternal and GAB made material representations to Eddy and Carolyn that created a reasonable belief on their part that they had no obligation to repay ISTA for medical expenses. ISTA does not dispute that the alleged misrepresentations were not made to or relied upon by ISTA. However, ISTA urges that it was damaged nonetheless and that a "fraud claim by a third person injured by

the deceit should be recognized in Indiana."

The five elements of fraud are: 1) a false statement of past or existing material fact 2) made with knowledge it was false or made recklessly without knowledge of its truth or falsity 3) made for the purpose of inducing the other party to act upon it 4) and upon which the other party did justifiably rely and act 5) proximately resulting in injury to the other party.

*Epperly v. Johnson,* 734 N.E.2d 1066, 1073 (Ind.Ct.App.2000) (citing *Rice v. Strunk,* 670 N.E.2d 1280, 1289 (Ind.1996)). "Detrimental reliance is often the dispositive element under Indiana law, because the plaintiff cannot recover for fraud unless he reasonably relied on the defendant's misrepresentations." *Short v. Haywood Printing Co., Inc.,* 667 N.E.2d 209, 213 (Ind.Ct.App.1996), *trans. denied.* Numerous Indiana cases restate the essential element that the plaintiff must have relied upon the defendant's representations. *See, e.g., Browning v. Walters,* 616 N.E.2d 1040, 1047 (Ind.Ct.App.1993) (concluding that complaint that did not specifically allege what, if any, representations defendant made on which plaintiff relied to his detriment did not state cause of action for common-law fraud); *Scott v. Bodor, Inc.,* 571 N.E.2d 313, 321 (Ind.Ct.App.1991) (noting that in order for plaintiff to recover under fraud theory, it must show both that it had right to rely on defendant's misrepresentations and that it did in fact rely on misrepresentations to its detriment); *Craig v. Hamilton,* 118 Ind. 565, 568, 21 N.E. 315, 316 (1889); *Burden v. Burden,* 141 Ind. 471, 476, 40 N.E. 1067, 1069 (1895) (concluding that a complaint based upon fraudulent representations must aver that plaintiff relied on the representations); *Kain v. Rinker,* 1 Ind.App. 86, 90, 27 N.E. 328, 329 (1891) (noting that

recovery cannot be had for fraud unless plaintiff relied on the fraudulent inducements or representations of defendant).

In support of its contention that Indiana should recognize a fraud claim by a third person injured by some deceit, ISTA cites *Havoco of America, Ltd. v. Hilco, Inc.,* 731 F.2d 1282 (7th Cir.1984), *Buxton Manufacturing Co., Inc. v. Valiant Moving & Storage,* 239 A.D.2d 452, 657 N.Y.S.2d 450 (1997), and *Doss v. Serra Chevrolet, Inc.,* 781 So.2d 973 (Ala.Ct.App.2000). These cases are neither controlling authority nor particularly helpful.

In *Havoco,* a case that did not concern insurance, the Seventh Circuit stated:

> Thus, Havoco did not allege that the defendants made misrepresentations to Havoco, which is the more typical situation; instead, it claimed that misrepresentations were made to third parties which frustrated Havoco's ability to conclude a satisfactory agreement with the TVA. By these means, Havoco was allegedly forced to enter into the Assignment Contract due to circumstances which the defendants, in combination with R & F Coal, wrongfully conspired to create. While these circumstances did not, as noted, comprise the usual fraud situation, we have no difficulty in treating these allegations as constituting a claim for fraud by Havoco.

731 F.2d at 1285. That is, the *Havoco* court, which was applying Illinois law, neither cited authority for its recognition of fraud in that case nor explained why it had "no difficulty in treating" the allegations as a fraud claim.

In *Buxton,* which also occurred outside of the insurance context, the court noted:

> It is generally the case that a cause of action to recover damages for fraud requires, inter alia, a showing that a false representation was made to an injured party, for the purpose of inducing reliance thereon, and reasonable reliance by the injured party (*see, e.g., Brown v. Lockwood,* 76 A.D.2d 721, 432 N.Y.S.2d 186). Fraud, however, may also exist where a false representation is made to a third party, resulting in injury to the plaintiff (*Eaton, Cole & Burnham Co. v. Avery,* 83 N.Y. 31; *Rice v. Manley,* 66 N.Y. 82; *Desser v. Schatz,* 182 A.D.2d 478, 581 N.Y.S.2d 796; *Cooper v. Weissblatt,* 154 Misc. 522, 277 N.Y.S. 709 . . .).

*Buxton* does not explain why New York permits this exception to the general rule. Further, none of the cases upon which *Buxton* relies for this proposition occur within the insurance context.

In *Doss,* a mother accompanied her daughter to a car dealer so the daughter could purchase a car. The car dealer informed the mother and daughter that the car daughter ultimately bought was new; in reliance thereon, the mother provided the down payment on the vehicle. Upon learning that the car had previously been sold or placed into demonstrator status, the mother filed a complaint alleging fraudulent misrepresentation and fraudulent suppression against the car dealer. The court stated:

> Although Alabama law recognized that persons who are not parties to a particular transaction generally have "no right of action [for fraud occurring during that transaction], there is an exception to the general rule: 'If a third person is injured by the deceit, he may recover against the one who made possible the damages to him by practicing the deceit in the first place.' " *Thomas v. Halstead,* 605 So.2d 1181, 1184 (Ala.1992) (quoting 37 C.J.S. Fraud § 60 (1944)).

*Doss,* 781 So.2d at 976–77. However, in both *Doss* and in *Thomas,* the misrepresentations were made to and relied upon

by the complaining party, unlike in the instant case.

Moreover, the Corpus Juris Secundum section cited in *Doss* discusses negligent misrepresentation. *See* 37 C.J.S. *Fraud* § 60 (1997). In particular, it states: "The tort of negligent misrepresentation imposes a duty in favor of all those third parties who defendant knows and should reasonably foresee will rely on the information in question." *Id.* However, we have clarified that "despite the limited recognition of the tort in the context of an employer-employee relationship, Indiana does not recognize the tort of negligent misrepresentation." *Darst v. Illinois Farmers Ins. Co.*, 716 N.E.2d 579, 584 (Ind.Ct.App.1999) (footnote omitted), *trans. denied.* Thus, negligent misrepresentation does not apply in the present case, which deals with insurance matters rather than employment. *Cf. University of Chicago Hosps. v. United Parcel Serv.*, 231 Ill.App.3d 602, 173 Ill. Dec. 64, 596 N.E.2d 688 (1992) (holding that insurer was not liable for negligent misrepresentation to hospital concerning amount of health insurance benefits available to patient).

In the only case we could find that provides some guidance concerning our state's law, the Southern District of Indiana indicated that plaintiffs could not show fraud absent evidence contradicting the defendants' position that they never had any direct contact with the plaintiffs. *Lycan v. Walters*, 904 F.Supp. 884, 897 (S.D.Ind. 1995). Applying Indiana law, the federal court stated:

> The Plaintiffs have failed to point to any misrepresentations by any of these three defendants to support a claim for actual fraud. The Rally Defendants have consistently stated that they never had any direct personal contact or written communication with any of the Plaintiffs. The Plaintiffs have not dis-

puted this position, nor have they provided this Court with any evidence to the contrary. Furthermore, Plaintiffs' brief does not list any misrepresentations made to them by these three Defendants, and no appropriate evidentiary material has been designated.

> Plaintiffs appear to rely on the May 20, 1991, Letter of Intent as evidence of misrepresentations by the Rally Defendants. This reliance is misplaced. While Garcia did sign this letter, both individually and on behalf of Rally Group and Rally Ventures, the Letter was addressed to Prime Corporation—not to Jeannette Lycan, Millard Pauley, or Gray Farms, Inc. *Simply stated, Plaintiffs cannot premise their fraud claim on statements that were not made to them.*

*Id.* (emphasis added).

In summary, we are presented with distinguishable and/or unhelpful authority from other jurisdictions, a lack of any binding authority on the subject, and persuasive guidance from the Southern District supporting the longstanding statement in Indiana that recovery cannot be had for fraud unless the plaintiff relied on the fraudulent inducements or representations of the defendant. Given all this, we are not inclined to recognize an exception to the longstanding rule. Accordingly, we conclude that the trial court should have granted summary judgment to Fraternal and GAB on ISTA's fraud claim.

### III. Breach of Duty of Subrogation Claim

█ Fraternal also argues that the trial court erred in denying summary judgment on the breach of duty claim. In support, Fraternal urges that it owed no duty to ISTA to protect ISTA's subrogation right and that ISTA did not give notice that it had such a right or that it would be asserting it. ISTA counters that there was a

duty to protect its subrogation right and that Fraternal breached it by ignoring the right despite knowledge that ISTA had been paying the Baxters' medical expenses.

 In order for a plaintiff to prevail on a claim for negligence, he must show that: (1) the defendant owed him a duty to exercise reasonable care; (2) the defendant breached that duty by failing to conform its conduct to the requisite standard of care; and (3) the plaintiff sustained injuries which were the proximate cause of the defendant's breach. *Fast Eddie's*, 688 N.E.2d at 1272. "However, absent a duty, there can be no negligence." *Id.* If prior cases have not already addressed the duty question, we perform the three-part *Webb v. Jarvis*, 575 N.E.2d 992, 995 (Ind.1991), analysis to decide whether a duty exists. *See Downs v. Panhandle Eastern Pipeline Co.*, 694 N.E.2d 1198, 1203 (Ind.Ct.App.1998), *trans. denied.*

 We can find no binding [2] authority on the question of duty under the circumstances presented. Thus, we apply the three-part *Webb* test, which requires that we balance the following factors in deciding whether a duty should be imposed: (1) the relationship between the parties, (2) the reasonable foreseeability of harm to the person injured, and (3) public policy concerns. *Webb*, 575 N.E.2d at 995. While the determination of whether these factors give rise to a duty is generally a matter for the court to decide, "factual questions may be interwoven with the determination of the existence of a relationship and the foreseeability of harm, rendering the existence of a duty a mixed question of law and fact, ultimately to be resolved by the fact-finder." *State v. Cornelius*, 637 N.E.2d 195, 198 (Ind.Ct.App. 1994) *trans. denied.*

 "In determining whether a relationship exists that would impose a duty, we must consider the nature of the relationship, a party's knowledge, and the circumstances surrounding the relationship." *Downs*, 694 N.E.2d at 1203. Here, the Baxters were covered by ISTA's plan and made a claim against the Moose Lodge. The Moose Lodge was insured by Fraternal. There was no contract or agreement between Fraternal and ISTA. Indeed, there was no direct personal contact or written communication between Fraternal and ISTA. Prior to the settlement of the Baxters' claim against the Moose Lodge, ISTA never notified Fraternal that ISTA was paying all of the Baxters' medical bills, that ISTA had a subrogation right, or that

---

**2.** However, we note that the Seventh Circuit has held that an insurer, even one having notice of a subrogation claim, has no obligation to recognize subrogation rights prior to or at the time that it settles with the covered individuals. *Central States Southeast and Southwest Areas Health & Welfare Fund v. State Farm Mutual Automobile Ins. Co.*, 17 F.3d 1081 (7th Cir.1994); *see also Witt v. Allstate*, 50 F.3d 536 (8th Cir.1995) and *Biomet, Inc. Health Benefit Plan v. Black*, 51 F.Supp.2d 942 (N.D.Ind.1999). Moreover, other jurisdictions have held that absent notice of an alleged subrogation right and an agreement to protect it, a third party is under no duty to protect an insurer's subrogation rights. *Great American v. Spoden*, 316

N.W.2d 740 (Minn.1982) and *Blue Cross of Mass. v. Travaline*, 398 Mass. 582, 499 N.E.2d 1195 (1986).

As for ISTA's reliance upon *Commercial Union Ins. Co. v. Blue Cross and Blue Shield of Alabama*, 540 So.2d 1368 (Ala.1989), we are unpersuaded of its relevance to the present case. In *Commercial.* the court held, "It is undisputed that Commercial Union had knowledge or notice of Blue Cross's right of subrogation. It can therefore be said that any settlement between the tort-feasor's insurer and the injured party would be made subject to the rights of the injured party's insurer." *Id.* at 1370. Here, in contrast, ISTA gave no notice and Fraternal had no knowledge of ISTA's right of subrogation.

ISTA would be asserting that right. The only thing Fraternal knew about ISTA's involvement prior to settling with the Baxters was that ISTA had paid $3,192.34 of Eddy's medical bills. Under these circumstances, we cannot say that the relationship[3] component supports the imposition of a duty on Fraternal's behalf to protect ISTA's subrogation right.

■ Moving to the foreseeability component, we note, "[t]he duty of reasonable care is not owed to the world at large but is limited to those who might reasonably be foreseen as being subject to injury by the breach of the duty." *Kottlowski v. Bridgestone/Firestone, Inc.*, 670 N.E.2d 78, 85 (Ind.Ct.App.1996), *trans. denied.* Hence, we focus on whether the "person actually harmed was a foreseeable victim and whether the type of harm actually inflicted was reasonably foreseeable." *Id.*

■ ERISA does not require subrogation provisions in plans, and a subrogation right exists only if a plan creates one. *See Member Services Life Ins. v. American Nat'l Bank*, 130 F.3d 950 (10th Cir.1997), *cert. denied.* Indeed, some plans provide no subrogation rights. *See id.* Moreover, subrogation clauses differ and may provide for subrogation only after the insured has been made whole upon duplicate payments. *See, e.g., United of Omaha v. Hieber*, 653 N.E.2d 83, 85 (Ind. Ct.App.1995), *trans. denied.* In addition, subrogation rights can be waived. *See National Mut. Ins. Co. v. Fincher*, 428 N.E.2d 1386, 1399 (Ind.Ct.App.1981). Thus, the mere fact that Fraternal knew of the existence of the ISTA plan and that it

had paid $3,192.34 does not make a subrogation clause or the assertion of such a right foreseeable. Indeed, such a claim is even less foreseeable when ISTA has failed to notify Moose Lodge or Fraternal of ISTA's subrogation right or its intention to assert it after more than a year has passed since the accident and the medical treatment. *Cf., e.g., Meridian Mut. Ins. Co. v. Trueblood & Graham*, 577 N.E.2d 606, 607 (Ind.Ct.App.1991) (insurer notified alleged tortfeasor and tortfeasor's insurer of its right to subrogation and the fact that it would be asserting its right); *Willard v. Automobile Underwriters Inc.*, 407 N.E.2d 1192, 1193 (Ind.Ct.App.1980) (same); *State Farm v. Mid–Century Ins. Co.*, 147 Ind. App. 258, 259–60, 259 N.E.2d 424, 425 (1970) (same). Consequently, we do not view the foreseeability prong as supporting the imposition of a duty on Fraternal to protect ISTA's subrogation right.

Finally, we reach the public policy component of the three-part duty test. In discerning public policy, we usually look to federal and state constitutions, the legislature, and the judiciary. *See Trotter v. Nelson*, 684 N.E.2d 1150, 1152–53 (Ind. 1997). Here, neither party has cited any constitutional provision concerning a duty to protect a subrogation right, and we likewise find none. Similarly, no Indiana statute appears to address the matter. Fraternal does cite the hospital lien statute,[4] which contains detailed requirements for giving notice to those who can be held responsible for the lien,[5] for the general proposition that a tortfeasor or its insurer should not be held liable when the one

---

**3.** We distinguish *Thompson v. Owensby*, 704 N.E.2d 134, 137 (Ind.Ct.App.1998), *trans. denied*, upon which ISTA relies. In *Thompson*, the relationship at issue was that of a claimant and the tortfeasor's insurer. The present relationship is further removed. Moreover, *Thompson* dealt with the duty to maintain

evidence rather than a duty to protect an unknown and unasserted subrogation right of a claimant's insurer.

**4.** Ind.Code §§ 32–8–26–1 through –8.

**5.** Ind.Code § 32–8–26–4.

asserting a subrogation right has not notified others that it would assert such a claim. As indicated previously, no Indiana cases have decided this matter.

 The policy of the law generally is to discourage excessive litigation and encourage the orderly negotiation and settlement of disputes. *Barrington Mgmt. Co., Inc. v. Paul E. Draper Family Ltd. P'ship*, 695 N.E.2d 135, 142–43 (Ind.Ct. App.1998). Although the parties agree upon the general public policy encouraging settlement, they disagree regarding how best to accomplish this policy. We view the claimant's insurer as being in the best position to effect this policy. That is, the insurer can draft its policy in such a way as to protect its rights and structure any proposed settlement process. For instance, ISTA could have included in its plan a provision requiring that the Baxters obtain ISTA's consent before any settlement or else risk invalidating coverage. *See, e.g., Dravet v. Vernon Fire and Cas. Ins. Co.*, 454 N.E.2d 440, 442 (Ind.Ct.App. 1983). In addition, the insurer can institute certain notice policies of its own. As applied here, had ISTA simply notified Moose Lodge, and in turn Fraternal, of its right of subrogation and of its intention to assert it, the current dispute could have been avoided.[6]

"Duty is not sacrosanct in itself, but is only an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection." *Kottlowski*, 670 N.E.2d at

85. As should be clear from the above discussion, the public policy prong, like both the relationship and the foreseeability prongs, does not support the imposition of a duty to protect another's subrogation right under these circumstances. As we previously stated, "absent a duty, there can be no negligence." *Fast Eddie's*, 688 N.E.2d at 1272. Accordingly, the trial court should have granted Fraternal's motion for summary judgment on this issue.

Affirmed in part and reversed in part.

BAKER and BARNES, JJ., concur.

---

6. On a final note, we disagree with ISTA's characterization of the designated evidence as a case of an insurance company attempting to avoid paying damages by making fraudulent statements to an injured party and then ignoring a right of subrogation. The Baxters stated that neither Fraternal nor GAB ever talked to them about who paid their medical bills. Moreover, there is no testimony from the Baxters that they knew what subrogation was or that their plan contained such a provision until after they settled their claim with Moose Lodge. The Baxters did not testify that they thought the statement, "this is just for pain and suffering" had anything to do with an obligation to repay someone. Furthermore, the designated evidence demonstrates that Fraternal was unaware of the subrogation right or ISTA's decision to assert it until after settlement with the Baxters.